## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| FRED KRAUTKRAMER, individually and on behalf of others similarly situated, | Civ. No.: 19-cv-2559 |
| Plaintiff, | CLASS ACTION |
| vs. | |
| YAMAHA MOTOR CORPORATION, U.S.A., INC., | **COMPLAINT AND JURY DEMAND** |
| Defendant. | |

Plaintiff Fred Krautkramer brings this action against Defendant Yamaha Motor Corporation U.S.A., Inc. ("Defendant" or "Yamaha"), by and through his attorneys, individually and behalf of all others similarly situated, and alleges as follows:

## <u>INTRODUCTION</u>

1.      This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of current and former owners of model years 2016-18 Yamaha Pure Sport YXZ1000R, YXZ1000SE, YXZ1000SS and YXZ1000 SS SE Side-by-Side vehicles, equipped with radiators mounted on the front of the vehicles ("Class

Vehicles").[1]

2.    The front-mounted radiators on the Class Vehicles are defectively designed and/or manufactured and frequently become clogged with mud while being operated as intended, resulting in inadequate cooling, overheated engines, and potentially catastrophic engine failure and even fire ("Radiator Defect"). This dangerous safety defect can cause harm to the operators of the Class Vehicles, as well as their passengers.

3.    This action arises from Yamaha's failure, despite its longstanding knowledge of this material manufacturing and/or design defect, to disclose to Plaintiff and other consumers that the Class Vehicles are predisposed to the Radiator Defect, causing the Vehicles' engines to overheat – resulting in both decreased performance and premature wear of the engines, engine bearings and other internal engine components as well as an increased cost of repair and remediation. Such premature failures can also result in catastrophic engine failure, engine stalling events, engine fires and other dangerous situations for occupants of the Class Vehicles and others in close proximity.

4.    Yamaha purports to be "the leader in providing you an inspirational experience to explore new terrain, new vehicles, and exciting new destinations.

---

[1] Plaintiff reserves the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

Yamaha designs, engineers, manufactures and tests its ATVs and Side-by-Side vehicles in the Real World, fueling your off-road passion with superior Capability, Comfort and Confidence!"[2]

5.    Not only did Yamaha actively conceal the fact that the Class Vehicles contain the Radiator Defect (and therefore require additional expenses to repair and/or remedy), it failed to reveal that the existence of this defect impairs the intended use, and would diminish the intrinsic and resale value of the Class Vehicles.

6.    Yamaha has long been aware of the Radiator Defect. Despite its longstanding knowledge of this defect, Yamaha has been unwilling to adequately repair the Class Vehicles when the defect manifests, and/or to pay for the relocation of the radiators to a more appropriate location on the Class Vehicles.

7.    Many owners of Class Vehicles have communicated with Defendant and its agents to request that Yamaha remedy and/or address the Radiator Defect and/or resultant damage at no expense. Defendant has failed and/or refused to do so. For customers whose Vehicles are within the six-month warranty period, Yamaha has done nothing to address or correct the Radiator Defect when it manifests in the Class Vehicles.

---

[2] *Realize Your Adventure*, YAMAHA, https://www.yamahamotorsports.com/realize-your-adventure-home (last visited Sept. 5, 2019).

8.      Despite notice and knowledge of the Radiator Defect from the numerous consumer complaints it has received, information received from Yamaha dealerships, pre-sale durability testing, and its own internal records, Yamaha has not recalled the Class Vehicles to repair the Radiator Defect, offered its customers a suitable repair free of charge, or offered to reimburse its customers who have incurred out-of-pocket expenses to address the Radiator Defect.

9.      As a result of Yamaha's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property. The unfair and deceptive trade practices committed by Yamaha were conducted in a manner giving rise to substantial aggravating circumstances.

10.     Had Plaintiff and other Class members known about the Radiator Defect at the time of purchase, they would not have purchased the Class Vehicles, or would have paid substantially less for the Class Vehicles.

11.     As a result of the Radiator Defect and the considerable monetary costs associated with attempting to address such defect, Plaintiff and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Yamaha's conduct.

12.     Accordingly, Plaintiff brings this action to redress Yamaha's violations of the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), and

also seeks recovery for Defendant's breach of express warranty, breach of implied warranty, common law fraud, breach of the covenant of good faith and fair dealing and, alternatively, unjust enrichment.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Yamaha transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, Yamaha has advertised in this district and has received substantial revenue and profits from its sales of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

15.    This Court has personal jurisdiction over Yamaha because it has conducted substantial business in this judicial district, and intentionally and

purposefully placed Class Vehicles into the stream of commerce within the district of Minnesota and throughout the United States.

## THE PARTIES

### Plaintiff Fred Krautkramer

16.    Plaintiff Fred Krautkramer is a citizen of the State of Minnesota and resides in Blaine, Minnesota.

17.    On or about March 23, 2019, Plaintiff Fred Krautkramer purchased a new 2016 YXZ1000R Yamaha Side-by-Side Pure Sport (VIN# 5Y4AN07Y2GA101134) from Ecofun Motorsports, an authorized Yamaha dealer and repair center located in Forest Lake, Minnesota for approximately $17,000. Prior to purchasing the Yamaha vehicle, Plaintiff reviewed various online advertising from Yamaha. None of that advertising disclosed the Radiator Defect.

18.    Plaintiff's Yamaha came with the radiator mounted on its front side.

19.    Upon riding his Class Vehicle, Plaintiff's radiator began to get clogged with mud.

20.    The mud-clogged radiator on Plaintiff's Class Vehicle interfered with his use and enjoyment of the vehicle because it regularly overheated. Plaintiff has attempted to flush the radiator with water but it continues to overheat.

21.    Plaintiff purchased his vehicle (which he still owns) for recreational

use.

22.    On or about late June or early July 2019, Plaintiff contacted Ecofun Motorsports about the radiator issues that Plaintiff was experiencing. However, Ecofun Motorsports stated that they were not aware of the radiator issue.

23.    After experiencing frequent overheating, Plaintiff purchased an aftermarket radiator relocation kit from his Yamaha dealer to resolve the issue which cost him approximately $2,000 with installation fees.

24.    Plaintiff also contacted Defendant around the same time to inquire about rebates and compensation for the new radiator and labor that was required for his vehicle. Plaintiff corresponded with Yamaha Customer Service and requested to have a manager contact him. On July 9, 2019, Plaintiff received a voicemail from a customer service supervisor. Plaintiff made repeat attempts to call her back, leaving several messages, and also sent an email and mailed a letter but never received any further communication from Defendant.

25.    Plaintiff's Class Vehicle was still within the warranty period when he contacted Yamaha and also when he brought it to the local dealer to have the radiator relocated.

26.    Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Radiator Defect, including, but not limited to, out-of-pocket loss associated with the Radiator Defect

and future attempted repairs and diminished value of his vehicle.

27.    Neither Defendant, nor its agents, dealers or other representatives informed Plaintiff of the existence of the Radiator Defect prior to purchase.

**Defendant**

28.    Defendant, Yamaha Motor Corporation U.S.A., Inc., is "a leading distributor and manufacturer in the motorsports market, with the most diversified line of products in America. Yamaha products are recognized the world over for superior quality in design, technology, craftsmanship and customer services."[3]

29.    Defendant does business in the United States, including design, manufacturing, distribution, and/or servicing of its products, including the Class Vehicles.

30.    Defendant is incorporated under the laws of California with its principal place of business located at 1270 Chastain Road in Kennesaw, Georgia.

31.    Founded in 1955, Yamaha Motor Corporation U.S.A. is a wholly owned subsidiary of Japan-based Yamaha Motor Corporation, Ltd.[4]

32.    Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the radiator locations within the Class Vehicles were performed exclusively by Defendant.

---

[3] *Yamaha Motorsports Dealer Prospect Site*, YAMAHA, https://www.yamahamotorsports.com/dealerprospects (last visited Sept. 5, 2019).
[4] *Id.*

33.     Upon information and belief, Defendant develops the owners'
manuals, warranty booklets and information included in maintenance
recommendations and/or schedules for the Class Vehicles.

34.     Defendant engages in continuous and substantial business in
Minnesota.

## TOLLING OF STATUTES OF LIMITATION

35.     Any applicable statute(s) of limitations have been tolled by Yamaha's
knowing and active concealment and denial of the facts alleged herein. Plaintiff
and members of the Class could not have reasonably discovered the true, latent
defective nature of the Radiator Defect until shortly before this class action
litigation was commenced.

36.     Yamaha was and remains under a continuing duty to disclose to
Plaintiff and members of the Class the true character, quality and nature of the
Class Vehicles and that it will require costly repairs and diminishes the resale value
of the Class Vehicles. As a result of the active concealment by Yamaha, any and
all applicable statutes of limitations otherwise applicable to the allegations herein
have been tolled.

## FACTUAL ALLEGATIONS

**A.     The Radiator Defect within the Class Vehicles**

37.     Yamaha first introduced the YXZ 1000R Pure Sport Side-by-Side in

the United States in 2016.

38.    The YXZ 1000R, YXZ1000SE, YXZ1000SS and YXZ1000 SS SE Pure Sport Side-by-Side for model years 2016-2018 years are all sold with the radiator located in the front of the vehicle.

39.    As background, a radiator is a type of heat exchanger. Generally, a cooling system works by sending a liquid coolant through passages in the engine. As the coolant flows through these passages, it absorbs heat from the engine. The heated fluid then travels to the radiator.  As it flows through the tubes of the radiator, the hot liquid is cooled by the air traveling across the fins of the radiator. Once the fluid is cooled, it returns to the engine to absorb more heat. Adequate airflow across the radiator is a critical component in most cooling systems.

40.    The radiators in the Class Vehicles are intended to cool the Class Vehicles' engine and should ensure the engine does not overheat while the Class Vehicles are being operated. The below pictures illustrate the front mounted location of the radiators in the Class Vehicles:





41.     When the radiators on the Class Vehicles become clogged with mud,

the radiators are unable to operate as intended, causing the Class Vehicles' engines to overheat. Once the engines overheat, the engines experience premature wear of the engines, engine bearings, and other internal engine components. Over time, premature wear will lead to catastrophic engine failure and even fire.

**B.    Yamaha's Knowledge of the Radiator Defect**

42.    Yamaha publicly acknowledged the need to have the radiators relocated onto the rear of its Pure Sport Side-by-Side vehicles, thus demonstrating its knowledge of the Radiator Defect.

43.    Yamaha redesigned the YXZ 1000R Pure Sport Side-by-Side for the 2019 model year, stating: "[F]or 2019, the YXZ1000R SS uses an all-new cooling system that not only ensures proper cooling during the toughest conditions, but is designed to ensure the cabin remains comfortable and *the radiator stays clear of mud and debris*."[5]

44.    Yamaha also touts its 2019 redesign as including a new cooling system that is "built to blow away the competition in every terrain, from desert dunes to muddy trails. To ensure peak performance every ride, *the 2019 YXZ1000R SS features a new rear-mounted radiator: this system not only reduces heat in the cabin, it remains clear of mud or debris build-up,* and is designed to funnel cool air

---

[5] *2019 YXZ1000R SS Specifications Sheet*, YAMAHA, https://www.yamahamotorsports.com/content/common/dpg/files/2019_yamaha_YXZ1000R_SS.pdf at p. 2 (last visited Sept. 5, 2019) (emphasis added).

through the radiator at low or high speeds equally well."[6]

45.     In fact, Yamaha has even issued a press release advertising the advantage of the relocation of the 2019 YXZ's radiator: "A new oversized radiator has been relocated behind the seats, eradicating excess cabin heat while simultaneously *eliminating the risk of clogging while driving through mud.*"[7] Below is a picture illustrating the location of the rear-mounted radiator in the 2019 YXZ:



46.     Yamaha Owners' Manuals explicitly warn owners of the Class

---

[6] *Id.*

[7] *Yamaha 2019 YXZ1000R – Most Versatile Pure Sport Side-by-Side*, GLOBALNEWSWIRE (June 6, 2018), https://www.globenewswire.com/news-release/2018/06/06/1517774/0/en/Yamaha-2019-YXZ1000R-Most-Versatile-Pure-Sport-Side-by-Side.html (emphasis added).

- 13 -

Vehicles not to allow their radiators to become clogged with mud: "The engine will tend to overheat if the radiator is caked with mud. . . . "[8] However, this warning is meaningless as Yamaha designed and intended the Class Vehicles to be used for various activities such as mud bogging and for use on a wide variety of rough terrains, including muddy trails.

47.    In many instances, consumers have incurred and will continue to incur expenses for repair of the radiators despite such Radiator Defect having been contained in the Class Vehicles when manufactured by Yamaha.

48.    Upon information and belief, Yamaha, through (1) its own records of customers' complaints, (2) dealership repair records, (3) warranty and post-warranty claims, (4) internal pre-sale durability testing, and (5) other various sources, was well aware of the Radiator Defect but failed to notify customers of the nature and extent of the problems with Class Vehicles or to provide any adequate remedy.

49.    Yamaha failed to adequately research, design, test and/or manufacture

---

[8] *See Model Years 2016-18 YXZ 1000R Owner's Manuals*, YAMAHA, available at https://dd5394a0b8ca8e97ba29-abf76f3d91a2125517d6c7c409f095c7.ssl.cf1.rackcdn.com/content/common/manuals/2018/2018_YXZ1000R_EPS_SE_LIT-11626-31-09_5ad6780e2a0ab744f8af1cee.pdf (April 2016) (last visited July 16, 2019), https://dd5394a0b8ca8e97ba29-abf76f3d91a2125517d6c7c409f095c7.ssl.cf1.rackcdn.com/content/common/manuals/2019/LIT-11626-32-32_5be3211c2a0ab6416052abdf.pdf (June 2018), at p. 8-70  (as to Model Year 2019) (last visited July 16, 2019).

the Class Vehicles with the radiator in an appropriate location before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

50.    Yamaha is experienced in the design and manufacture of motorsports products. As an experienced designer and manufacturer, Yamaha conducts tests, including pre-sale durability testing, on all aspects of its products' designs, including radiator location, to verify that they are free from defect and align with Yamaha's specifications.

51.    Through its quality control initiatives, Yamaha knew or should have known that the engines in the Class Vehicles were defective.

52.    Yamaha has not contacted Class Members by direct mail, email, telephone or other means to inform them how they can receive free repairs related to the Radiator Defect within the United States. Additionally, upon information and belief, Yamaha has also not provided associated information regarding the Radiator Defect on its website or through the news media.

53.    Yamaha also expressly warranted the Class Vehicles to be "free from defects in material and workmanship" for a period of six (6) months from the date of purchase (except for the battery, which Yamaha warranted for a period of 30

days).[9] Upon information and belief, this warranty is applicable to the Radiator

Defect; however, Yamaha has failed to correct the issue.

54.    Buyers and other owners of the Class Vehicles were without access to

the information concealed by Yamaha as described herein, and therefore

reasonably relied on Yamaha's representations and warranties regarding the

quality, durability, and other material characteristics of the Class Vehicles. Had

these buyers known of the Radiator Defect and the potential associated harm, they

would have taken steps to avoid that harm and/or would have paid less for the

Class Vehicles than the amounts they actually paid, or would not have purchased

the Class Vehicles.

**C.    Complaints by Other Class Members**

55.    Plaintiff's experience is by no means an isolated or outlying

occurrence. Indeed, the internet is replete with examples of forums and other

websites where consumers have complained of the exact same Radiator Defect

within the Class Vehicles.

56.    The following is just a small sampling of the many complaints made

by Class Vehicle owners. These publicly available complaints, posted as early as

---

[9] *Owner's Manual – YXZ10YEXH, YXZ10YESH*, YAMAHA, available at https://dd5394a0b8ca8e97ba29-abf76f3d91a2125517d6c7c409f095c7.ssl.cf1.rackcdn.com/content/common/manuals/2017/LIT-11626-30-21%20REV%20-5-31-16_5951610c2a0ab7877c37bb12.pdf at p. 11-6 (last visited July 24, 2019).

2016, when the first Class Vehicles were placed into the market, evidence

Yamaha's prior knowledge of the Radiator Defect, the negative experiences

encountered by Class Members, and the financial burden this places on them:

Consumer No. 1:

Radiator Location Sucks for Mud!  I've taken all the radiator location
comments with a grain of salt assuming it was guys trying to really mud it
and I'm sure some that still pertains. Well I'm on the bandwagon of what a
shitty design. I bought my YXZ to do sand so I'll likely never run into
plugging the radiator but *I was astonished how little mud it takes to clog it
up.* There was one YXZ in our group yesterday and there were a few mud
holes we had to go through and they were not huge nor deep. But, they did
have to be hit with some speed causing alot of splash. The YXZ went from
no overheating problems at slow speeds to nearly instant high temps. Later
we crossed a deep creek and he blew through it and was able to flush out the
radiator and all the overhearing issues went away as fast as they started. I
realize this is not a mud machine but I was just really surprised and honestly
disappointed how quickly a little mud on a mild trail ride caused problems.[10]

Consumer No. 2:

Searched for post about this so looking for your feed back. How is your yxz
now since it's been overheated a few times? Asking because *mine clogged
with mud and overheated twice this past weekend with red light coming on.*
Just wondering if these engine are fragile or if they can take a little
overheating and be fine. I of course did not run it hard after light came on
but had drive easy and up hill for few min till could stop. Out in middle of
no where trails will 80 other buggies. Coolant did bubble out but managed
collect it and put back in along with fresh bottled water until next day. Have

---

[10] Post by 6gearz, Administrator on Sept. 25, 2016, YXZTALK.COM,
https://www.yxztalk.com/threads/radiator-location-sucks-for-mud.23265/ (last visited
Sept. 5, 2019) (emphasis added).

no reason to think any damage occurred and runs fine just peronoid [sic] bout this new machine.[11]

Consumer No. 3:
[H]as anybody had overheating issues with their yxz? *we rode on sunday in some pretty muddy conditions, and i ended up plugging up my radiator with mud and overheating it.* the temp light came on and i shut it down, but it popped the rad cap and spewed coolant everywhere.[12]

Consumer No. 4:
Yep, I only had the clogged up challenge after running thru a 30' mud hole at speed each lap for around 5 laps... But my radiator was completely covered too. Just nothing down there to block the splash at all.[13]

Consumer No. 5:
Found out some interesting things. Apparently *after a day of ridding in very muddy conditions the radiator got plugged up.* Even after washing , which I cleaned out radiator , it was still packed with mud. Riding with the clogged radiator caused the coolant to heat up and drain out the overflow tube . The radiator has been thoroughly cleaned and coolant topped off and have had zero problems since.[14]

Consumer No. 6:
*Rode Brimstone this past weekend and had issues with overheating due to mud[ ] in radiator. Anyone else having this problem?*

---

[11] Post by WVgearReducYXZ on May 5, 2016, YXZTALK.COM, https://www.yxztalk.com/threads/overheating.4578/#post-180546 (last visited Sept. 5, 2019) (emphasis added).
[12] Post by arob on March 2, 2016, YXZTALK.COM, https://www.yxztalk.com/threads/overheat-and-radiator-hydrolock.8441/ (last visited July 16, 2019) (emphasis added).
[13] Post by True 520 on March 2, 2016, YXZTALK.COM, https://www.yxztalk.com/threads/overheat-and-radiator-hydrolock.8441/ (last visited July 16, 2019).
[14] Post by Jake on Jan. 25, 2016, YXZTALK.COM, https://www.yxztalk.com/threads/overheating.4578/ (last visited July 17, 2019) (emphasis added).

Yup, mine overheated at royal blue last fall. . . check out my radiator relocate pics in the gallery. . . . [A] slightly more modified YXZ won the race, he also had radiator relocated.[15]

Consumer No. 7:
I'm kinda struggling with some of the standard over heating and excessive in cab heat issues and wanted to find a solution.

The only real answer for me was to relocate the radiator to the rear...addresses the mud-packing/over-heating issues and center tunnel, heat funneling effect.[16]

57.     Further, at least one media source publicly discussed the Radiator Defect as early as 2016, placing Defendant on notice of its existence: "One of the biggest problems we found with the YXZ is the location of the stock radiator. It is not conducive to racing or riding in any type of mud. It will clog and cause the engine to overheat quickly. . . ."[17]

58.     Additionally, at least one company has successfully marketed a radiation relocation kit designed to address the Radiator Defect: "A very common problem for any UTV enthusiast is over heating due to the stock mounting location of the radiator. *The stock radiator is mounted up front which leaves it very*

---

[15] Post by ShiftNitSE on March 2, 2016, YXZOWNERS.COM, https://www.yxzowners.com/forum/yamaha-yxz-1000r-general-discussion/3193-radiator-overheating-due-mudd.html (last visited Sept. 5, 2019).
[16] Post by Rocktonka on April 15, 2017, YXZTALK.COM, https://www.yxztalk.com/threads/custom-radiator-relocation.35786/ (last visited Sept. 5, 2019).
[17] *See* George White, *How to make your YXZ Race Ready*, UTVSCENE (updated July 16, 2016), https://utvscene.com/make-yamaha-yxz-race-ready/.

*vulnerable to damage and mud clogging. We have relocated the radiator to the rear,* increased coolant capacity, and incorporated dual fans! This is the ultimate setup for the driver that demands performance from their UTV!"[18]

## CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action on behalf of himself, and on behalf of the following nationwide class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Nationwide Class consists of the following:

**Nationwide Class:**

All persons in the United States who are current or former owners of a Class Vehicle (the "Nationwide Class").

60.     In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiff seeks to represent the following state class:

**Minnesota Class:**

All persons in Minnesota who are current or former owners of a Class Vehicle (the "Minnesota Class").

---

[18] *See Radiator Relocation Kit Yamaha YXZ1000R/SS*, HESS MOTORSPORTS, https://www.hess-motorsports.com/collections/yamaha-yxz/products/radiator-relocation-kit-yamaha-yxz1000r (last visited Sept. 5, 2019) (emphasis added); *see also Radiator Relocation Kit – Yamaha Grizzly*, HIGHLIFTER, https://www.highlifter.com/high-lifter-rad-kits-cooling/radiator-relocation-kit-yamaha-grizzly-rk-fr-y700.asp (Made for Yamaha Grizzly ATVs; "Nothing kills a ride worse than mud in the radiator. You're [sic] ATV is not quite broke, but it isn't running either. You and your buddies have to keep stopping over and over for you to cool off. Keep your radiator clean and your engine cool with High Lifter's Signature Radiator Relocation Kit designed especially for riders who love those deep mud holes.") (last visited Sept. 5, 2019).

61.    Together, the Nationwide Class and the Minnesota Class shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definitions.

62.    <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Yamaha and obtainable by Plaintiff only through the discovery process, Plaintiff believes that thousands of Class Vehicles have been sold in each of the states that are the subject of the Class.

63.    <u>Predominance and Commonality</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.  whether the location of the radiators on the Class Vehicles makes them predisposed to becoming clogged with mud resulting in overheated engines;

    b.  whether the Class Vehicles contain a manufacturing or other defect as a result of the radiator placement;

c. whether Defendant knowingly failed to disclose the existence and cause of the Radiator Defect in Class Vehicles;

d. whether Defendant's conduct violates the Minnesota consumer protection statutes;

e. whether, as a result of Defendant's omissions and/or misrepresentations of material facts related to the Radiator Defect, Plaintiff and members of the Class have suffered ascertainable loss of monies and/or property and/or value;

f. whether, as a result of Defendant's omissions and/or misrepresentations of material facts related to the Radiator Defect, Plaintiff and members of the Class have suffered an increased cost of maintenance and/or repair related to the Class Vehicles; and

g. whether Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

64. Typicality: All of the Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased a Class Vehicle with the Radiator Defect, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Yamaha's wrongful conduct. Plaintiff is advancing

the same claims and legal theories on behalf of himself and all absent Class

members.

65.    Adequacy: Plaintiff is an adequate representative because his interests

do not conflict with the interests of the Class that he seeks to represent, he has

retained counsel competent and highly experienced in complex class action

litigation, and he intends to prosecute this action vigorously. The interests of the

Class will be fairly and adequately protected by Plaintiff and his counsel.

66.    Superiority: A class action is superior to all other available means of

fair and efficient adjudication of the claims of Plaintiff and members of the Class.

The injury suffered by each individual Class member is relatively small in

comparison to the burden and expense of individual prosecution of the complex

and extensive litigation necessitated by Yamaha's conduct. It would be virtually

impossible for members of the Class to individually and effectively redress the

wrongs done to them. Even if the members of the Class could afford such

individual litigation, the court system could not. Individualized litigation presents a

potential for inconsistent or contradictory judgments. Individualized litigation also

increases the delay and expense to all parties, and to the court system, presented by

the complex legal and factual issues of the case. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of

single adjudication, economy of scale, and comprehensive supervision by a single

court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Yamaha's vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

67.    Injunctive Relief: Pursuant to Fed. R. Civ. P. 23(b)(2), Yamaha has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68-70)
### (On Behalf of the Minnesota Class)

68.    Plaintiff and the Minnesota Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

69.    Plaintiff and members of the Minnesota Class are "persons" as defined by the Minnesota Prevention of Consumer Fraud Act ("MPCFA"), MINN. STAT. § 325F.68(2). The Class Vehicles sold to Plaintiff and the Class are "merchandise" as defined by MINN. STAT. § 325F.68(2).

70.    The MPCFA makes unlawful "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact

been misled, deceived, or damaged thereby." MINN. STAT. § 325F.69(1). The

MPCFA further provides that "any person injured by a violation of [the MPCFA]

may bring a civil action and recover damages, together with costs and

disbursements, including costs of investigation and reasonable attorney's fees, and

receive other equitable relief as determined by the court." MINN. STAT. § 8.31(3a).

71.     Defendant engaged in unlawful conduct in violation of the MPCFA by

making knowing and intentional omissions. Defendant knowingly failed to

disclose the manufacturing and/or material Radiator Defect in the Class Vehicles in

order to secure the sale of the Vehicles, and to offer them at a premium price.

72.     Furthermore, when the front-located radiators began becoming

clogged with mud due to the Radiator Defect, Defendant failed to reveal to Class

members that such radiator clogging is the result of a manufacturing and/or

material defect that was actually caused by Defendant. Instead, Class members

have been forced to pay out-of-pocket for repairs or relocation necessitated by

Defendant's defective products.

73.     Defendant did not fully and truthfully disclose to its customers the

true nature of the inherent defect in the radiator location, which was not readily

discoverable until after the Class Vehicles were purchased. As a result, Plaintiff

and the other Class members were fraudulently induced to purchase the Class

Vehicles with the said Radiator Defect and all of the resultant actual and potential

problems. These facts that Defendant concealed were solely within its possession.

74.    Defendant intended that Plaintiff and all Class members rely on the acts of concealment and omissions, so that they would purchase the Class Vehicles

75.    Plaintiff and the Class actually relied on Defendant's misrepresentations and omissions alleged herein and caused Plaintiff and the Class to purchase Class Vehicles. Defendant's conduct caused Plaintiff and Class members to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiff and Class members have suffered an ascertainable loss by receiving less than what was promised.

76.    A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class. Had the Radiator Defect in the Class Vehicles been disclosed, consumers would not have purchased them or would have paid less for the Class Vehicles had they decided to purchase them.

77.    Plaintiff and the Class did not receive the benefit of their bargain as a result of Defendant's conduct.

78.    Defendant's unlawful acts and practices complained of herein affect the public interest. As a direct and proximate result of Defendant's violations of the MPCFA, Plaintiff and the Class have suffered injury-in-fact and/or actual damage. Pursuant to Minn. Stat. § 8.31 subd. 3a, Plaintiffs and the Class seek

actual damages, attorneys' fees, and any other just and proper relief as provided under the MPCFA.

## COUNT II
### BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class and Minnesota Class)

79.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

80.    Defendant expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Defendant also expressly warranted that its vehicles would be "free from defects in material and workmanship."[19]

81.    Defendant breached these warranties by selling to Plaintiff and Class members the Class Vehicles with known radiator location problems, which are therefore not of high quality, and which fail prematurely and/or fail to function properly.

82.    As a result of the Defendant's actions, Plaintiff and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other

---

[19] https://dd5394a0b8ca8e97ba29-abf76f3d91a2125517d6c7c409f095c7.ssl.cf1.rackcdn.com/content/common/manuals/2017/LIT-11626-30-21%20REV%20-5-31-16_5951610c2a0ab7877c37bb12.pdf at p. 11-6 (last visited July 24, 2019).

related damage.

83.    Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitations are unenforceable because it knowingly sold a defective product without informing consumers about the manufacturing and/or material defect.  Furthermore, Defendant continues to charge Class members for relocating the radiators to the rear of the Class – if it addresses the Radiator Defect at all -- when in fact such relocation is actually necessitated because of Defendant's defective product.

84.    The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Yamaha and Class members, and Yamaha knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

85.    Plaintiff and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

## COUNT III
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the Nationwide Class and Minnesota Class)

86.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

87.     A warranty that the Class Vehicles were in merchantable condition is implied by law.

88.     These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which all-terrain side-by-side vehicles are used.  Specifically, the Class Vehicles are inherently defective in that their radiators are mounted on their front sides, making them prone to becoming clogged with mud.

89.     Defendant was provided notice of these issues by numerous informal and formal complaints filed against them, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiff and other Class members.

90.     As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

<u>**COUNT IV**</u>
**COMMON LAW FRAUD**
**(On Behalf of the Nationwide Class and Minnesota Class)**

91.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

92.    Defendant made material omissions concerning a presently existing or past fact. For example, Defendant did not fully and truthfully disclose to its customers the true nature of the inherent design defect with the Class Vehicles' engines, which was not readily discoverable until after the Vehicles were purchased. As a result, Plaintiff and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Radiator Defect and all of the resultant problems.

93.    These omissions were made by Defendant with knowledge of their falsity, and with the intent that Plaintiff and Class members rely upon them.

94.    Plaintiff and Class members reasonably relied on these omissions, and suffered damages as a result.

<u>**COUNT V**</u>
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**
**(On Behalf of the Minnesota Class)**

95.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

96.    Every contract in Minnesota contains an implied covenant of good

faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

97.    Defendant breached the covenant of good faith and fair dealing through malicious conduct by, *inter alia*, failing to notify Plaintiff and Class members of the Radiator Defect in the Class Vehicles, and failing to fully and properly repair this defect.

98.    Defendant acted in bad faith and/or with a malicious motive to deny Plaintiff and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**<u>COUNT VI</u>**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class and Minnesota Class)**

99.    Plaintiff and the Class incorporate the foregoing allegations. This count is pled in the alternative to the contract-based claims.

100.    Plaintiff and members of the Class conferred a benefit on Defendant.

101.    Defendant had knowledge that this benefit was conferred upon it.

102.    Defendant has been and continues to be unjustly enriched at the expense of Plaintiff, and its retention of this benefit under the circumstances would be inequitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court:

A.  determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.  appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.  award any and all damages, as allowed by law, to which Plaintiff and Class members are entitled;

D.  award pre-judgment and post-judgment interest on such monetary relief;

E.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to relocate radiators on the Class Vehicles to their rear sides, and/or to replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the Radiator Defect;

F.  award reasonable attorney's fees and costs; and

G.      grant such further relief that this Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury.


Dated:  September 19, 2019                Respectfully submitted,

**GUSTAFSON GLUEK PLLC**

s/*David A. Goodwin*
Daniel C. Hedlund (#258337)
David A. Goodwin (#386715)
Ling S. Wang (#399447)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
E-Mail: dhedlund@gustafsongluek.com
            dgoodwin@gustafsongluek.com
            lwang@gustafsongluek.com

Matthew D. Schelkopf
(admitted *pro hac vice*)
Joseph B. Kenney
**SAUDER SCHELKOPF**
555 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: (610) 421-1326
E-Mail: mds@sstriallawyers.com
            jbk@sstriallawyers.com

*Attorneys for Plaintiff*