# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ZACH McQUEEN and FRED KRAUTKRAMER, individually and on behalf of others similarly situated,<br><br>                    Plaintiffs,<br><br>      vs.<br><br>YAMAHA MOTOR CORPORATION, U.S.A.,<br><br><br>                    Defendant. | Civ. No.: 19-cv-2559 (DWF/BRT)<br><br><br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## INTRODUCTION

Defendant Yamaha Motor Corporation's ("Defendant" or "Yamaha") knowingly sold dangerous off-road vehicles with defective radiators that result in inadequate engine cooling, engine overheating, engine failure, and even engine fire. Yamaha has failed to inform consumers of this dangerous safety defect, or recall the defective vehicles. Recognizing the existence of the defect, Yamaha made changes to later models of the vehicles to obviate it. Plaintiffs allege that Yamaha's concealment of the dangerous defect caused them to purchase their vehicles when they otherwise would not have purchased them at all or would have paid less for them. Plaintiffs assert claims for violations of state consumer protection laws, breach of warranty, fraud, and unjust enrichment.[1] Yamaha's

---

[1] Plaintiffs voluntarily concede their express warranty claim under Indiana law only (Count III) and good faith and fair dealing claims (Count VI).

motion to dismiss seeks to avoid all liability for selling dangerously the defective vehicles. As detailed herein, Yamaha cannot escape liability at this stage and its motion to dismiss should be denied.

## STATEMENT OF FACTS

Yamaha designs, engineers, manufacturers, and sells model years 2016–2018 of Yamaha's Pure Sport YXZ1000R, YXZ1000SE, YXZ1000SS, and YXZ1000SS SE Side-by-Side vehicles (the "Class Vehicles"). Second Amended Complaint ("SAC") ¶ 1. Plaintiffs allege that the Class Vehicles all suffer from a design and manufacture defect that Yamaha failed to disclose at the point of sale. (SAC ¶¶ 1-3). The defect causes the Class Vehicles' engines to overheat as a result of the radiators' placement (the "Radiator Defect"). *Id.* ¶¶ 2-3. Yamaha mounted the radiators to the front of the Class Vehicles. *Id.* ¶ 48. Instead of properly cooling the Class Vehicles' engines, the Class Vehicles' front-mounted radiators do not operate as intended and cause the Class Vehicles' engines to overheat. *Id.* ¶¶ 51-53. During the intended use of the Class Vehicles, the front-mounted radiators become clogged with mud, debris or sand and are unable to properly cool the Class Vehicles' engines. *Id.* ¶¶ 51, 53, 55-56, 68. The overheating causes premature wear of the engine, engine bearings, and other internal components, and can destroy head gaskets and cause antifreeze to boil over and spray vehicle users and passengers. *Id.* ¶¶ 51-53. Premature wear of the engine causes catastrophic engine failure and even fire. *Id.* ¶¶ 51, 53.

Yamaha has known of the risk posed by the Class Vehicles' front-mounted radiator since at least 2016. *Id.* ¶ 68. Despite recognizing the risk posed by the Class Vehicles'

engines overheating as a result of the radiator placement, Yamaha continued mounting the radiator to the front of the Class Vehicles for the model years 2016–2018. These radiators were manufactured in a way that does not allow for proper venting and cooling. Yamaha relocated the radiators to the rear of the redesigned 2019 model year YXZ 1000R Pure Sport Side-by-Side vehicle, acknowledging the risk posed by the Class Vehicles' front-mounted radiator. *Id.* ¶¶ 54-55. Yamaha publicly stated, "[F]or 2019, the YXZ 1000R SS uses an all-new cooling system that not only ensures proper cooling during the toughest conditions, but is designed to ensure the cabin remains comfortable and the radiator stays clear of mud and debris." *Id.* ¶ 55. Yamaha also advertised that this new rear-mounted radiator reduces cabin heat and eliminates the risk of clogging while driving through mud. *Id.* ¶¶ 56-57.

Yamaha has never recalled the Class Vehicles nor disclosed the true nature of the Radiator Defect to Plaintiffs and the public at large. *See, e.g.*, *id.* ¶¶ 60, 64.

## LEGAL STANDARD

In order to survive a motion to dismiss for failure to state a claim brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (quoting *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544, 555). When reviewing a motion to dismiss, a court must accept as true all of the plaintiff's allegations and construe them in the light most favorable to the plaintiff. *Riley v. St. Louis Cty.*, 153 F.3d 627, 629 (8th Cir. 1998). A complaint must "state a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588

F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While a complaint needs more "than labels and conclusions," it "does not need detailed

factual allegations" for a claim to be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007).

Claims that are subject to the heightened pleading standard of Rule 9(b) of the

Federal Rules of Civil Procedure need only be "specific enough to give defendants notice

of the particular misconduct which is alleged to constitute the fraud charged so that they

can defend against the charge and not just deny that they have done anything wrong."

*United States ex rel. Costner v. United States*, 317 F.3d 883, 889 (8th Cir. 2003).

## ARGUMENT

### I.   Plaintiffs Have Adequately and Sufficiently Pled IDCSA, MPCFA, and Common Law Fraud Claims.

Defendant mischaracterizes the nature of Plaintiffs' claims under the Indiana

Deceptive Consumer Sales Act ("IDCSA"), the Minnesota Prevention of Consumer

Fraud Act ("MPCFA"), and common law fraud claims when they argue that Plaintiffs'

theory of liability fails under all counts just because the front-mounted location was

allegedly disclosed. Def. Mem. at 8. The crux of Plaintiffs' claim is not whether "the

front-mounted location [itself] *was* disclosed", but rather that its front-mounted location

is an inherent design and/or manufacturing defect and that the radiators' frequent

clogging with mud, debris, or sand when being used as intended was actually caused by

Defendant. SAC ¶¶ 2–3, 20-21, 53, 84-85, 96-97.

Defendant's argument improperly places a burden on Plaintiffs to know, by the mere virtue of their supposed visual observation of the radiator's location (a fact Defendant asserts with no support from Plaintiffs' complaint), the universe of Defendant's fraud—that such radiators are defectively designed and/or manufactured, that this defect causes engine overheating resulting in decreased performance and premature wear on engine, engine bearings and other internal components, increased cost of repair and remediation, engine failure, stalling, fires, and other dangerous situations to Plaintiffs. SAC ¶¶ 3, 51, 53. The law, however, places the duty on Defendant to disclose. Unlike Defendant, Plaintiffs do not presume to be and are not designers nor engineers of Class Vehicles. Thus, Defendant's argument is unavailing and the Court should deny its motion to dismiss Plaintiffs' omissions-based claims.

### A. Defendant Knowingly Failed to Disclose the Radiator Defect, and That Such Defect is the Result of a Design and/or Manufacturing Defect Caused by Defendant.

Plaintiffs have alleged that Defendant's failure to disclose the material Radiator Defect caused Plaintiffs harm. *E.g.*, SAC ¶¶ 3, 65-66, 83-84, 96-96. Omissions are actionable if they are material to the transaction, and if the party concealing the relevant facts was under a legal or equitable obligation to communicate the fact to the other party. *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 694-95 (Minn. 2014); *DeVoe Chevrolet-Cadillac, Inc. v. Cartwright*, 526 N.E.2d 1237, 1240 (Ind. App. 4th Dist. 1988) (requiring a duty to disclose certain facts to another, the party's knowing failure to do so, and the other party's justifiable reliance to his detriment); *see also Gasbi, LLC v. Sanders*, 120 N.E.3d

614, 618 (Ind. App. 2019) ("incurable" acts, unlike "uncured" acts" under the IDCSA do not require notice).

Courts routinely apply a more relaxed and less formulaic version of Rule 9(b)'s who, what, when, where, how requirements to omission-based claims at the motion to dismiss stage. *See*, *e.g.*, *In re Polaris Mktg., Sales Practices, and Products Liab. Litig.*, 364 F. Supp. 3d 976, 988 (D. Minn. 2019) (upholding fraudulent omission and consumer fraud claims); *OrthoAccel Techs., Inc. v. Devicix, LLC*, No. 15-1503 DWF/TNL, 2015 WL 4563134, at *3 (D. Minn. July 29, 2015) ("Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the core factual basis of the fraud claims.") (citations and internal quotation marks omitted); *Schwartz v. Pella Corp.*, 2:14-CV-00556-DCN, 2014 WL 7264948, at *6 (D.S.C. Dec. 18, 2014) (denying motion to dismiss fraudulent omission claims where plaintiff alleged defendant was aware of a defect, concealed such defect from consumers, and plaintiff would have taken different action had they known about the defect); *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 614 (D.N.J. 2014) (noting that fraud by omission claims are not required to plead fraud as precisely as they would a false representation claim).

Plaintiffs have alleged that they purchased Class Vehicles from authorized Yamaha dealers. SAC ¶¶ 17, 27. Prior to their purchases, Plaintiffs reviewed various advertising from Yamaha, none of which disclosed the Class Vehicles' defective design and/or manufacture and that they would become frequently clogged with mud or debris, resulting in inadequate cooling, overheating, potential catastrophic engine failure and

6

fire, and the resulting increased risk to occupants, passengers, and others in close proximity. SAC ¶¶ 2, 3, 17, 27. It is irrelevant that Plaintiffs purchased Class Vehicles in 2019; Plaintiffs do not allege that they knew that the 2019 version had back-mounted radiators until after the fact or that Plaintiffs knew that this design change was the result of Defendant's knowledge of and attempt to remedy the Radiator Defect for newer models. Even if Plaintiffs were aware the 2019 version featured a back-mounted radiator, this is irrelevant to Defendant's duty to disclose the Radiator Defect in the Class Vehicles to Plaintiffs under the IDSCA, MFPCA, and common law fraud.

Plaintiffs allege that Yamaha specifically designed and manufactured Class Vehicles for activities such as mud bogging or otherwise riding in every terrain, including muddy terrains. SAC ¶¶ 56-58; 69. Its advertising and meaningless warning of potential overheating "if the radiator is caked with mud" is merely demonstrative of this knowledge. SAC ¶¶ 55-58; 68 (compiling customer complaints, one specifically noting "*how little mud it takes to clog it up*"). Plaintiffs further alleged that even on terrain without mud, the radiators are unable to operate as intended. SAC ¶ 53. Had Defendant properly disclosed that the Radiator Defect makes the Class Vehicles unusable and unsafe, Plaintiffs would not have purchased them. SAC ¶¶ 66, 88, 101. Thus, Defendant's failure to disclose the Radiator Defect is inherently "unfair, abusive, or deceptive." *Sims*

*v. New Penn Fin. LLC*, 3:15-CV-263, 2016 WL 6610835, at \*5 (N.D. Ind. Nov. 8, 2016).[2]

### B.  Defendant Had a Duty to Disclose.

Minnesota courts have identified a non-exclusive set of special circumstances that triggers a duty to disclose: (1) "a confidential or fiduciary relationship with the other party"; (2) "special knowledge of material facts to which the other party does not have access"; and (3) when a person is speaking, they "must say enough to prevent the words communicated from misleading the other party." *Graphic Commc'ns*, 850 N.W.2d 682 at 695.

Here, Plaintiffs have alleged that they purchased from authorized Yamaha dealers and repair centers, that Defendant exclusively controls the design, manufacture, distribution, service, repair, modification, installation, and decisions regarding radiator locations, and that Defendant is experienced in the design and manufacture of Class Vehicles. SAC ¶¶ 17, 27, 42, 62, 63. Plaintiffs have also specifically alleged Defendant had exclusive knowledge of the Radiator Defect but has not disclosed it. SAC ¶¶ 54-64, 66. Moreover, Defendant's insignificant warning of potential overheating "if the radiator

---

[2] Plaintiffs' quotation of *Sims* should not be construed to suggest that Plaintiffs agree with Defendant's argument that its case facts apply. Indeed, both *Graphic Commc'ns* and *Sims* are factually and legal distinguishable here. Neither involved goods where fitness for intended use was at issue. The *Sims* court concluded that omission-based claims failed because plaintiff pled "no facts to support that [Defendant's] omission was 'unfair, abusive, or deceptive' in any way" (2016 WL 6610835, at \*5) and the *Graphic Commc'ns* court stated that plaintiff "failed to allege any facts that would trigger a duty" for defendants to disclose additional facts (N.W.2d 682 at 697).

is caked with mud" in its owner's manual has no relevance. The owner's manual was not provided until *after* the Plaintiffs purchased their Class Vehicles. (*See* Section III, *infra*.) This is just one example of Defendant's misleading, and wholly incomplete disclosure. *See* SAC ¶ 58.

Although Defendant attempts to cast Plaintiffs' claims as hypothetical, Plaintiffs have asserted clear allegations that the Radiator Defect is present in every Class Vehicle, and those defects have caused concrete out of pocket expenses for the Plaintiffs. *E.g.*, SAC ¶¶ 19-21, 24, 28-30, 33, 34, 36, 97-98. Not only did Defendant fail to properly disclose the defects, Defendant also ignored Plaintiff Krautkramer's multiple attempts to seek compensation for related expenses. SAC ¶¶ 32-34. Accordingly, to the extent that allegations of a duty is required, equity imposes a duty on Defendant to properly disclose the Radiator Defect, which Defendant failed to do.

Defendant also argues that the lack of an "allegation here that Plaintiff Krautkramer contracted with Yamaha," precludes Plaintiff's claims under the MPCFA and common law. Def.'s Mem. at 12. There is no such requirement. *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, CV 16-2765 (JLL), 2017 WL 1902160, at *19 (D.N.J. May 8, 2017) (collecting cases and acknowledging that many states, including MN and IN recognize a duty to disclose where defendant possesses exclusive or superior knowledge or actively conceals the omitted information). If Defendant's argument for privity of contract requirement were to hold any water, Minnesota residents would never be able to bring an action against any manufacturer for fraud—the antithesis of the MPFCA's purpose—as consumers rarely  contract with manufacturers directly. *See*

9

MINN. STAT. § 325F.69(1) (expressly authorizing a private cause of action for any party directly or indirectly injured by violations of the MFCA); *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn. 2001) (noting legislature's intent to make it easier for consumers to sue under the statute versus at common law; "plaintiff need only plead that defendant engaged in conduct prohibited by the statutes and that plaintiff was damaged thereby.") As such, Defendant's motion should be denied.

## II.   Yamaha Breached its Express Warranties

### A.   Yamaha Breached its Warranty.

Yamaha breached its Limited Warranty ("Warranty") by selling Plaintiffs defective vehicles and by refusing to pay to address the Radiator Defect within those vehicles. SAC ¶¶ 6, 105-110. Defendant argues that the Warranty does not cover design defects. The defect alleged in the SAC, however, is covered by the Warranty in this case, both as a manufacturing and as a design defect.

Defendant relies on *Bruce Martin Constr., Inc. v. CTB, Inc.,* 735 F.3d 750 (8th Cir. 2013), in support of its argument that a design defect is not covered by the Warranty under Indiana law. Def. Mem. at 13. That case, however, expressly acknowledges the "distinction between design and manufacture," *Bruce Martin Constr., Inc.*, 735 F.3d at 753 (citing *Hoffman v. E.W. Bliss Co.*, 448 N.E.2d 277, 281 (Ind.1983)), and that the phrase "free from defects in material and workmanship" in a warranty can refer to manufacturing defects. *Bruce Martin Constr., Inc.,* 735 F.3d at 753 (quoting *Rice v. Sunbeam Prods., Inc.,* No. CV 12–7923–CAS–(AJWX), 2013 WL 146270, at *12 (C.D.Cal. Jan. 7, 2013)). Likewise in the instant case, Defendant has promised that its

10

Class Vehicles will be "free from defects in material and workmanship."[3] Unlike the plaintiff in *Bruce Martin Constr., Inc.,* though, Plaintiffs here do not limit their express warranty claim to a design defect theory; instead, the Complaint alleges that the Class Vehicles are "defectively designed and/or manufactured." SAC ¶¶ 2, 61, 108. So, the manufacturing defect is covered by the Warranty.

Defendant also incorrectly claims that Plaintiffs did not present their vehicles to Yamaha for warranty service or repairs. Def. Mem. at 14.) In fact, Plaintiffs did comply with the Warranty requirement that they "[g]ive notice to an authorized Yamaha Side x Side dealer of any and all apparent defects within ten (1) days after discovery, and make the machine available at that time for inspection and repairs at such dealer's place of business." (Yamaha Warranty at 11-6). In compliance with that requirement, Plaintiff Krautkramer "contacted [the dealer] about the radiator issues that he was experiencing." SAC ¶ 32). Ecofun Motorsports, though, declined to have Plaintiff Krautkramer bring in his vehicle, stating "that they were not aware of the radiator issue." *Id.* Thus, Plaintiff Krautkramer did give notice to the dealership, but it opted not to have him bring in the vehicle.

At this stage, Defendant's motion to dismiss the express warranty claims is premature, because discovery is needed to resolve the factual issue of whether the defect is one of design or manufacture. *See Persad v. Ford Motor Co.*, No. 17-12599, at *4

---

[3] Yamaha Warranty at p. 11-6; SAC ¶ 105 ("Defendant expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Defendant also expressly warranted that its vehicles would be "free from defects in material and workmanship.").

(E.D. Mich. July 16, 2018) (denying defendant automobile manufacturer's motion to dismiss breach of express warranty claim where discovery was needed to determine whether fumes entering passenger compartment were due to design or manufacturing defect); *Braden v. Tornier, Inc.,* C09-5529RJB, 2009 WL 3188075, at *3 (W.D. Wash. Sept. 30, 2009) (denying motion to dismiss state product liability claim because "[p]laintiffs properly point out that whether a product's defect was due to its design or manufacture is the sort of information that is gained in discovery. To force Plaintiffs to plead facts in support of the theory would shut the courthouse doors before Plaintiffs had an opportunity to meaningfully engage in the process.").

### B. Yamaha's Warranty limits fail because they are unconscionable and unenforceable.

Defendant next argues that Plaintiffs' express warranty claims should be dismissed because it made no "extra-contractual" warranties, and that any efforts to seek coverage under such warranties are barred by the Warranty's statement that it "makes no other warranty of any kind, express or implied." Def. Mem. at 15. That argument fails because efforts to limit the Warranty coverage in this case are unconscionable and thus unenforceable, in particular because Yamaha knew about the Radiator Defect at the time that it sold the Class Vehicles.

Courts have long held that a seller is unable to disclaim a warranty where its terms are shown to be unconscionable. *See, e.g., Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001, 1009 (D. Minn. 2017) (citations omitted) (denying lithium-ion battery manufacturer's motion to dismiss because it knew about design defect, where consumer

brought putative class action alleging design defects). One way that a buyer can demonstrate such unconscionability for purposes of seeking to have a warranty disclaimed is by pleading sufficient facts showing the defendant's knowledge prior to the sale. *Id.* This is precisely what Plaintiffs have done in their Complaint against Yamaha: the Complaint specifically alleges Defendant's knowledge of the Radiator Defect. SAC ¶ 6; 7; 54). In fact, as further alleged in the Complaint, not only did Yamaha know of the Radiator Defect, it actually *publicized its redesign* that was developed to address it.[4] Therefore, like the defendant in *Podpeskar,* Yamaha clearly knew of the design defect caused by the location of the radiator on its Class Vehicles. As such, its efforts to disavow the Radiator Defect from Warranty coverage should fail.

Just as the plaintiff in *Podpeskar* "cites reviews of Amazon.com as a 'sampling' of the complaints [defendant] received," 247 F. Supp. 3d at 1004, Plaintiffs in this case allege specific facts evidencing Defendant's knowledge of the Radiator Defect. *See* Section I(A), *supra*; *cf. Ambassador Press, Inc. v. Durst Image Technology U.S., LLC*, 949 F.3d 417, 422 (8th Cir. 2020) (affirming grant of motion to dismiss where buyer of large-format commercial printer failed because buyer had not set forth any facts beyond general descriptions of its own experience). Thus, because Yamaha's knowledge of the Radiator Defect renders the Warranty unconscionable, the court should be find it to be

---

[4] *See, e.g.,* SAC ¶ 55 (2019 model is "designed to ensure the cabin remains comfortable and the radiator stays clear of mud and debris.") (citation omitted); SAC ¶ 56 ("To ensure peak performance every ride, the 2019 YXZ1000R SS features a new rear-mounted radiator: this system not only reduces heat in the cabin, it remains clear of mud or debris build-up.") (citation omitted); SAC ¶ 57 (Yamaha press release announcing decision to revise design of Class Vehicles by relocating the radiator) (citation omitted).

unenforceable. *See, e.g., Hagen v. McAlpine & Co. Ltd.,*  No**.** 14–1095 (DWF/LIB), 2015 WL 321428 at *3 (D. Minn. Jan. 26, 2015) ("Under Minnesota law, a limitation on consequential damages [for breach of express warranty] is enforceable unless it is unconscionable."); Minn. Stat. § 336.2 –719(1)(a) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.").

Further, the Indiana case cited by Yamaha, *Art Hill, Inc. v. Heckler,* 457 N.E.2d 242 (Ind. Ct. App. 1983), actually supports Plaintiffs' express warranty claims in this case. In *Art Hill,* the Indiana Court of Appeals affirmed a trial court's enforcement of an express warranty, where a fifth-wheel camper purchaser had been told by the dealership that his vehicle would be compatible with a 5/8 ton pickup truck. When the camper proved to be incompatible with the truck, the buyer sought to enforce the warranty but the seller argued that it was protected by the following phrase: "The Seller hereby expressly disclaims all warranties either express or implied. . . " The court agreed with the buyer that the disclaimer was inoperative because it was at odds with the express warranty. *Id.* at 245. Thus, the *Art Hill, Inc.* decision actually supports Plaintiffs: Yamaha's efforts simply wipe out any other potential warranties, such as design and manufacturing defects, through the usage of the broad phrase that it "makes no other warranty of any kind" is inoperative and unenforceable as to Plaintiffs.

In anticipation of Plaintiffs' argument that Yamaha's Warranty is unconscionable, Defendant relies on *Dubbe v. A.O. Smith Harvestone Products, Inc.,* 399 N.W. 2d 644 (Minn. Ct. App. 1987), a case in which a buyer of silos sued the manufacturer when the products did not work as expected to result in higher quality feed, healthier animals and

14

cost savings. *Id.* at 646. *Dubbe,* though, also supports Plaintiffs' claims: the plaintiff in *Dubbe* was a farmer who had prior experience in commercial dealings, so the exclusions of the Warranty were strictly construed against him. *Id.* at 647-48. In sharp contrast, Plaintiffs McQueen and Krautkramer in the instant case – and likely most or all members of the Class – are not professional users of their Class Vehicles and do not profess to have any specialized knowledge of them. Instead, both Plaintiffs purchased their Class Vehicles for recreational use. SAC ¶ 22; 31.

Moreover, Section 2-302(2) of the UCC, which Plaintiffs' home states have adopted,[5] requires that "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." Plaintiffs are entitled to continue pursuing their breach of express warranty claim at this time.[6]

## III.   Yamaha Breached its Implied Warranty of Merchantability

Yamaha argues that Plaintiffs' breach of the implied warranty of merchantability should be dismissed because Yamaha disclaimed the warranty in its owner's manual and

---

[5] Minn. Stat. § 336.2–302; Ind. Code § 26-1-2-302(2).

[6] In addition, a comment to Ind. Code § 26-1-2-316 provides that "[t]his section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language. . . ." *Id.*, *Ed. Note, Uniform Commercial Code Comment.* This is precisely what Yamaha seeks to do with its Warranty.

because there is no allegation of a breach. Both arguments are wrong and Yamaha's motion to dismiss Plaintiffs' implied warranty claims should be denied.

### A. Yamaha did not disclaim any implied warranties

First, disclaimers of implied warranties must be made prior to sale to be binding on consumers. *See, e.g.*, *Kalmes Farms, Inc. v. J-Star Indus., Inc.*, No. CIV.02-1141 (DWF/SRN), 2004 WL 114976, at *7 (D. Minn. Jan. 16, 2004). Plaintiffs were not provided with the owner's manuals prior to purchasing their Class Vehicles. Yamaha also does not argue it provided the owner's manuals prior to sale of the Class Vehicles. Instead, Yamaha simply contends the disclaimer in the owner's manual effectively disclaims any implied warranties. Def. Mem. at 17-18.

Indeed, the first sentence of introduction section of the owner's manual states: "Congratulations on your purchase of the [Class Vehicle]." ECF No. 30-3, p.4. There is no question that the owner's manual is a post-sale document. Accordingly, the warranty disclaimer was not bargained for in the agreement between the parties because it was not presented until after the sale was complete. *See Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1138-39 (D. Minn. 2016) (denying motion to dismiss because warranty disclaimer was not received until after sale); *see also Kalmes Farms, Inc.*, 2004 WL 114976, at *7 ("Finally, the Court finds that the disclaimer of remedies and limitations of damages were not provided to Kalmes Farms until well after the sale took place and therefore are ineffective as a matter of law"). As the *Johnson* court summarized:

> Johnson argues that he did not receive the formal warranty at the time of sale, which, if true, would render the limitation invalid. *Cf. Zutz v. Case Corp.*, No. 02–1776, 2006 WL 463539, at *3 (D. Minn. Feb. 24, 2006) ("If

16

a disclaimer is not provided at the time of sale, it is invalid."). Under Minnesota law, the time of sale generally occurs upon "physical delivery of the goods" to the buyer, Minn. Stat. § 336.2–401(2), and Johnson asserts that he did not receive the formal warranty until after delivery. Nothing in the complaint undermines this argument, meaning that the Court cannot resolve the dispute, and apply the limitation, at this stage of the case. *See In re Hardieplank Fiber Cement Siding Litig.*, No. 12–2359, 2013 WL 3717743, at *8 (D. Minn. July 15, 2013) (declining to apply a formal warranty clause on a motion to dismiss where there was an unresolved factual dispute regarding whether the clause was enforceable).

*Johnson*, 175 F. Supp. 3d at 1138-39 (footnote omitted). Because the owner's manual was not provided until after sale, the disclaimer is invalid.

Second, Yamaha's disclaimer is not sufficiently conspicuous. "Courts have considered capitalization, typeface, contrasting color, and location of the clause in determining whether it is conspicuous." *Valley Paving, Inc. v. Dexter & Chaney, Inc.*, No. C2-00-361, 2000 WL 1182800, at *2 (Minn. Ct. App. Aug. 22, 2000) (citation and internal quotation marks omitted). A contract "term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Minn. Stat. § 336.1–201(10).

Here, the purported disclaimer appears on page 207 of the owner's manual. ECF No. 30-3, p. 208. While the disclaimer is capitalized and in bold font, its location renders it inconspicuous. *See, e.g.*, *Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 118 (3d Cir. 2017) ("Because the contractual provision here appears on the ninety-seventh page of a 'Health and Safety and Warranty Guide' that gives no notice of something claiming to be a binding bilateral agreement and waiver of legal rights, we will not presume that consumers read or had notice of that purportedly binding agreement.").

17

Lastly, Yamaha's argument also fails because its disclaimer is unconscionable. Plaintiffs have alleged that Yamaha's warranties are unconscionable because Plaintiffs did not have the ability to negotiate the terms and Yamaha concealed that the Class Vehicles are defective. *See* SAC ¶¶ 108-109. Yamaha's admission that it does not present the implied warranties disclaimer before sale, but merely provides a post-sale disclaimer at the end of a 200 page owner's manual further confirms that a consumer would feel surprised by the disclaimer. Given these facts, Yamaha's disclaimer is unconscionable, and Plaintiffs claim necessarily survives dismissal. *See Carlson v. General Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989) (quoting 15 W. Jaeger, *Williston on Contracts* § 1763A, at 225 (1972)) (holding that because "by definition, unconscionability includes 'the procedural abuse of unfair surprise, usually manifested in the concealment of important facts' [ ]" and because "[t]hat is in large measure what plaintiffs have claimed," defendant's implied warranties disclaimer may be found unconscionable").

Indeed, in *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310 (D. Minn. 2018), a similar argument precluded dismissal. There, the plaintiff alleged that the mileage and duration limitations on his vehicle were unconscionable because "(1) substantively, because NNA was aware, prior to the sale of the vehicle, of defects in the CVTs; and (2) procedurally, because NNA "unilaterally imposed durational and damage limits" in the Warranty, without affording Plaintiff or the putative class members any bargaining authority." *Id.* at 1322. Plaintiffs allege the same here, and thus should also be afforded "the opportunity to obtain discovery concerning [the unconscionability] issue." *Id.* at

1323 *see also Podpeskar v. Makita U.S.A Inc.*, 247 F. Supp. 3d 1001, 1009 (D. Minn. 2017) (same).

### B.   Yamaha breached the implied warranty of merchantability

Second, Plaintiffs plainly allege a breach of the implied warranty of merchantability. Yamaha goes to great lengths to try to recast Plaintiffs' allegations as if they purchased their Class Vehicles knowing that Yamaha defectively designed them. Def. Mem. at 20. This is not true, and also not what Plaintiffs allege. Plaintiffs allege that Yamaha concealed the design defect that caused the Class Vehicle's engines to clog with mud, overheat, and prematurely wear, which causes catastrophic engine failure, engine stalling, and engine fires. SAC ¶ 3.

Plaintiffs agree that the implied warranty of merchantability is breached when a vehicle does not provide safe, reliable transportation. Def. Mem. at 19 (citing *Tellinghuisen v. Chrysler-Group, LLC*, No. A13-2194, 2014 WL 4289014, at *3 (Minn. Ct. App. Sept. 2, 2014)); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 981 (N.D. Cal. 2014) (stating the purpose of a car is "not just to provide transportation but rather safe, reliable transportation"). Plaintiffs plainly allege that the defect prevents the safe and reliable use of the Class Vehicles. In addition to the serious safety concerns alleged above, both Plaintiffs allege that that the defect prevents their use of the Class Vehicles. Plaintiff McQueen alleges that he attempts to flush the radiator each time it clogs, but it still continually overheats and clogs. SAC ¶ 21. Plaintiff Krautkramer alleges the same, and that he was forced to purchase an aftermarket radiator

relocation kit from his Yamaha dealer to resolve the defect, which caused him $2,000, in order to be able to use the Class Vehicle in a safe, reliable manner. SAC ¶¶ 30, 33.

There are numerous cases across the country holding similar allegations sufficient to state a claim for a breach of the implied warranty of merchantability. *See, e.g.*, *Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 897 (N.D. Cal. 2015) (finding risk of engine stalling sufficient safety defect); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 997 (N.D. Cal. 2013) (finding potential failure of headlamps sufficient safety defect); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1237 (C.D. Cal. 2011) (finding water leak that could cause electrical faults and engine failure sufficient safety defect); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1237 (C.D. Cal. 2011) (finding defective windshield sufficient safety defect because of risk in rollover accidents); *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 561 (D.N.J. 2012) (finding transmission defect that could cause premature transmission failure to present safety risk); *Henderson v. Volvo Cars of N. Am.*, No. 09-4146, 2010 WL 2925913, at *9-10 (finding that allegations of slippage, hesitation, harshness and unexpected transmission failure which rendered vehicles unfit for the ordinary purpose of driving are sufficient to survive a motion to dismiss).

Yamaha's attempt to compare this case to *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 341 (Tex. Ct. App. 2003), also fails. Def. Mem. at 19. In *Polaris*, the jet skis at issue included warning decals alerting potential purchasers to the fact that the jet skits did not have "off-throttle steering or braking capabilities." *Id.* at 340-41. Here, Plaintiffs

are alleging precisely the opposite: Yamaha failed to warn of the defect prior to the Plaintiffs' purchases. SAC ¶¶ 5, 10, 66. As such, *Polaris* is inapposite.

Because Yamaha's purported disclaimers are invalid, and because Plaintiffs properly allege the defect breaches the implied warranty of merchantability and involves safety concerns, Yamaha's attempt to dismiss Plaintiffs' implied warranty claims should be rejected.

## IV.    Plaintiffs' Unjust Enrichment Claim is Properly Pled

Yamaha contends that Plaintiffs' unjust enrichment claims should be dismissed for two reasons. First, Yamaha argues that its decision to conceal the defect is not unjust. Second, Yamaha argues that its written warranty precludes claims pled in the alternative at the pleading stage. Both arguments should be rejected.

First, Plaintiffs allege that Yamaha knowingly sold defective Class Vehicles to Plaintiffs and the class. SAC ¶¶ 6-7, 54-66. Indeed, the SAC is replete with detailed allegations regarding the specific nature of the defect, and Yamaha's decision to conceal that defect from consumers at the point of sale. These allegations form the basis for Yamaha's violations of the consumer protection statutes in both Minnesota and Indiana. SAC ¶¶ 80-103. Had Yamaha disclosed the defect instead of concealed it, Plaintiffs would not have purchased their Class Vehicles. SAC ¶¶ 10, 66. These allegations are sufficient to state an unjust enrichment claim. *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 828 (D. Minn. 2010) (denying motion to dismiss unjust enrichment claim because "[t]he Complaint alleges that each of the Plaintiffs would have insisted on paying a lower price or would not have purchased their vehicles at all had they known of the alleged

21

defects."). In short, Plaintiffs have adequately alleged that Yamaha illegally benefited from the sale of the Class Vehicles.

Yamaha attempts to emphasize the fact that its newer models featured a relocated radiator in attempt to shift the burden to Plaintiffs to discover the defect on their own. Def. Mem. at 24. Preliminarily, Plaintiffs *do* allege that they would not have purchased their Class Vehicles, or would have paid less, had Yamaha disclosed the defect. SAC ¶ 10. Regardless, Yamaha contends that Plaintiffs' claim should be dismissed because it believes "[t]he only reasonable conclusion is that the purchase price of Plaintiffs' Side by Sides reflected the fact that the [Class Vehicles still had the radiator in the front]." Def. Mem. at 24. Plaintiffs allege just the opposite: that the price did not reflect the defective radiator because Yamaha concealed that the Class Vehicles were defective. SAC ¶¶ 5, 45-46, 66.  "[T]he court must take the plaintiff's factual allegations as true." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted). As such, Yamaha's baseless "conclusion" must be rejected.

Second, Plaintiffs' unjust enrichment claim is adequately pled in the alternative to their contract-based claims at this stage. The Federal Rules of Civil Procedure clearly authorize pleading claims in the alternative. Fed. R. Civ. P. 8(a)(3). Yamaha's argument was rejected in *Knotts v. Nissan North America, Inc.*, where the Court observed that while " a party may not ultimately recover on both breach of contract and unjust enrichment claims, it may pursue these alternative theories until it is conclusively decided that a valid and enforceable contract exists between the parties which governs the specific dispute before the court." 346 F. Supp. 3d 1310, 1323 (D. Minn. 2018) (internal citation

marks and citation omitted). As such, the Court denied the motion to dismiss until after such a finding was made on summary judgment. *Id.*; *see also Podpeskar v. Makita U.S.A., Inc.*, 247 F. Supp. 3d 1001, 1012-13 (D. Minn. 2017) (stating that at the pleading stage "it is impossible to know . . . if [Plaintiff] has an adequate remedy at law" and finding unjust enrichment claim properly pled in the alternative); *Mono Advert., LLC v. Vera Bradley Designs, Inc.*, 285 F. Supp. 3d 1087, 1091 (D. Minn. 2018) (same).

Here, Plaintiffs should be permitted to pursue their warranty claims in the alternative. Indeed, Yamaha argues that the its warranty is not applicable to the Class Vehicles. Def. Mem. at 24. Yamaha cannot have it both ways, *i.e.* it cannot credibly argue that the alleged defect is not covered by the warranty while simultaneously contending the warranty bars Plaintiffs' unjust enrichment claim. As such, Yamaha's motion to dismiss should be denied.

## CONCLUSION

For the foregoing reasons, Yamaha's motion to dismiss should be denied.

Dated:  March 16, 2020                                  Respectfully submitted,

                                                                **GUSTAFSON GLUEK PLLC**

                                                    By:     s/ *David A. Goodwin*
                                                                David A. Goodwin (#386715)
                                                                Daniel C. Hedlund (#258337)
                                                                Ling S. Wang (#399447)
                                                                Mickey L. Stevens (#398549)
                                                                Canadian Pacific Plaza
                                                                120 South Sixth Street, Suite 2600
                                                                Minneapolis, Minnesota 55402
                                                                Tel: (612) 333-8844

Facsimile: (612) 339-6622
dgoodwin@gustafsongluek.com
dhedlund@gustafsongluek.com
lwang@gustafsongluek.com
mstevens@gustafsongluek.com


Matthew D. Schelkopf
(admitted *pro hac vice*)
Joseph B. Kenney
(admitted *pro hac vice*)
**SAUDER SCHELKOPF**
555 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: (610) 421-1326
mds@sstriallawyers.com
jbk@sstriallawyers.com

*Attorneys for Plaintiffs*