## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Zach McQueen and Fred Krautkramer, individually and on behalf of others similarly situated,

                    Plaintiffs,

v.

Yamaha Motor Corporation, U.S.A.,

                    Defendant.

Civil No. 19-2559 (DWF/BRT)

**MEMORANDUM OPINION
AND ORDER**

---

David A. Goodwin, Esq., Daniel C. Hedlund, Esq., and Ling S. Wang, Esq., Gustafson Gluek PLLC; Matthew D. Schelkopf, Esq., and Joseph B. Kenney, Esq., Sauder Schelkopf, counsel for Plaintiffs.

Theane Evangelis, Esq., and Timothy W. Loose, Esq., Gibson, Dunn & Crutcher LLP; Bryan R. Freeman, Esq., Thomas R. Pack, Esq., Maslon LLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court upon Defendant Yamaha Motor Corporation's ("Defendant" or "Yamaha") Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). (Doc. No. 26.) Plaintiffs Zach McQueen ("McQueen") and Fred Krautkramer ("Krautkramer") (collectively, "Plaintiffs") oppose Defendant's motion.[1] (Doc. No. 35 ("Pl. Opp.").) For the reasons set forth below, the Court grants in part and denies in part Defendant's motion to dismiss.

---

[1]     Plaintiffs bring this action both individually and on behalf of all others similarly situated ("Class Members").

## BACKGROUND

For purposes of this motion, the Court summarizes the factual allegations in the Complaint and the materials referenced and embraced by the Complaint.[2]

This lawsuit relates to model years 2016-2018 Yamaha Pure Sport YXZ1000R, YXZ1000SE, YXZ1000SS, and YXZ1000SS SE Side-by-Side vehicles, equipped with radiators mounted on the front of the vehicles ("Class Vehicles").[3]  (Compl. ¶¶ 1, 48.) Plaintiffs allege that the front-mounted radiators on the Class Vehicles are defectively designed and/or manufactured.  (*Id*. ¶ 2.)  In particular, the front-mounted radiators frequently become clogged with mud or debris while being operated as intended, resulting in inadequate cooling, overheated engines, and potentially catastrophic engine failure and even fire ("Radiator Defect").  (*Id*.; *see also id*. ¶¶ 51-53, 55-56, 68.)  Even when the Class Vehicles are used in areas without mud, the radiators are often unable to operate as intended, causing the Class Vehicles' engines to overheat.  (*Id*. ¶ 53.)

Plaintiffs allege that Yamaha demonstrated its knowledge of the Radiator Defect when Yamaha relocated the radiator to the rear of Yamaha's Pure Sport Side-by-Side vehicles.  (*Id*. ¶ 54.)  For the 2019 YXZ 1000R Pure Sport Side-by-Side, Yamaha stated that "for 2019, the YXZ1000R SS uses an all-new cooling system that not only ensures proper cooling during the toughest conditions, but is designed to ensure the cabin remains

---

[2]    The Complaint of the present motion is the Second Amended Complaint.  (Doc. No. 21 ("Compl.").)

[3]    A radiator is a type of heat exchanger.  (Compl., ¶ 49.)  The radiators in the Class Vehicles are intended to cool the vehicle's engine and should ensure the engine does not overheat while the vehicle is being operated.  (*Id*. ¶ 50.)

comfortable and ***the radiator stays clear of mud and debris***." (*Id*. ¶ 55 (emphasis in original); *see also id*. ¶ 56.) Yamaha also issued a press release advertising the advantage of the relocation of the 2019 YXZ's radiator, stating that the relocation of the radiator "eradicat[es] excess cabin heat while simultaneously ***eliminating the risk of clogging while driving through mud***." (*Id*. ¶ 57 (emphasis in original).) Yamaha's Owner's Manuals explicitly warn owners of the Class Vehicles not to allow their radiators to become clogged with mud. (*Id*. ¶ 58.)

Plaintiffs allege, upon information and belief, that Yamaha, through (1) its own records of customers' complaints, (2) dealership repair records, (3) warranty and post-warranty claims, (4) internal pre-sale durability testing, and (5) other various sources, was well aware of the Radiator Defect but failed to notify customers of the nature and extent of the problems. (*Id*. ¶ 60.) Plaintiffs further allege that Yamaha is experienced in the design and manufacture of motorsports products but failed to adequately research, design, test, and/or manufacture the Class Vehicles with the radiator in an appropriate location before marketing and selling the Class Vehicles. (*Id*. ¶¶ 61-62.) Plaintiffs allege that, through Yamaha's quality control initiatives, Yamaha knew or should have known that the engines in the Class Vehicles were defective. (*Id*. ¶ 63.) Plaintiffs allege that buyers of the Class Vehicles were without access to the information concealed by Yamaha and, thus, reasonably relied on Yamaha's representations and warranties regarding the quality, durability, and other material characteristics of the Class Vehicles. (*Id*. ¶ 66.) Plaintiffs also point to several publicly available complaints and criticisms, posted as early as 2016, that relate to the Radiator Defect. (*Id*. ¶¶ 68-69.)

On or about October 18, 2019, Plaintiff McQueen purchased a used 2017 YXZ1000R Pure Sport from an authorized Yamaha dealer and repair center.  (*Id*. ¶ 17.) Prior to purchasing the vehicle, McQueen reviewed various online advertising from Yamaha—none of which disclosed the Radiator Defect.  (*Id*.)  McQueen's Yamaha has a front-mounted radiator.  (*Id*. ¶ 19.)  Upon riding the vehicle, McQueen's radiator frequently becomes clogged with mud or sand, which causes the vehicle to regularly overheat.  (*Id*. ¶¶ 20-21.)  McQueen purchased his vehicle for recreational use.  (*Id*. ¶ 22.) McQueen also purchased an extended warranty that covers the vehicle until 2022.  (*Id*. ¶ 23.)

On or about March 23, 2019, Plaintiff Krautkramer purchased a new 2016 YXZ1000R Yamaha Side-by-Side Pure Sport from an authorized Yamaha dealer and repair center.  (*Id*. ¶ 27.)  Prior to purchasing the vehicle, Krautkramer reviewed various online advertising from Yamaha—none of which disclosed the Radiator Defect.  (*Id*.) Krautkramer's Yamaha has a front-mounted radiator.  (*Id*. ¶ 28.)  Upon riding the vehicle, Krautkramer's radiator began to get clogged with mud, which causes the radiator to regularly overheat.  (*Id*. ¶¶ 29-30.)  Krautkramer purchased his vehicle for recreational use.  (*Id*. ¶ 31.)  After experiencing frequent overheating, Krautkramer purchased an aftermarket radiator relocation kit from his Yamaha dealer to resolve the Radiator Defect. (*Id*. ¶ 33.)  Krautkramer contacted Defendant to inquire about rebates and compensation for the new radiator and labor that was required for his vehicle, but Krautkramer's communication attempts were ultimately unsuccessful.  (*Id*. ¶ 34.)  Krautkramer's vehicle was still within the warranty period when he attempted to contact Defendant.  (*Id*. ¶ 35.)

Plaintiffs allege that Yamaha, despite its longstanding knowledge of the Radiator Defect, failed to disclose that the Class Vehicles are predisposed to the Radiator Defect. (*Id.* ¶ 3.) Plaintiffs further allege that Yamaha failed to reveal that the existence of the Radiator Defect impairs the intended use of the Class Vehicles and diminishes the intrinsic and resale value of the Class Vehicles. (*Id.* ¶ 5.) Plaintiffs allege that Yamaha has been unwilling to adequately repair Class Vehicles that suffer from the Radiator Defect. (*Id.* ¶ 6.)

Plaintiffs allege that had Plaintiffs and other Class Members known about the Radiator Defector at the time of purchase, Plaintiffs and other Class Members would not have purchased the Class Vehicles or would have paid substantially less for the Class Vehicles. (*Id.* ¶ 10.) Plaintiffs allege that Plaintiffs and Class Members have suffered considerable monetary costs associated with attempting to address the Radiator Defect. (*Id.* ¶ 11.)

## DISCUSSION

## I.    Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss

may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint.[4]  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

In addition to the pleading standard explained by the Supreme Court in *Twombly* and *Iqbal*, Federal Rule of Civil Procedure 9(b) requires "particularity" when pleading "fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9(b) serves to deter suits filed for purpose of discovering unknown wrongs and to enable a defendant to understand a plaintiff's claim and effectively prepare a defense. *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir. 1997).  Rule 9(b) applies to all claims premised on fraud, including "claims

---

[4]     Defendant filed a Request for Judicial Notice in support of its Motion to Dismiss. (Doc. No. 29.)  According to Defendant, Plaintiffs cited each of the exhibits in their Complaint.  (*Id.* at 2; *see also* Doc. No. 30.)  Plaintiffs do not contest Defendant's characterization.  Accordingly, the Court takes judicial notice of the exhibits included in Defendant's Request for Judicial Notice.  *See Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018).

of false advertising, deceptive trade practices, unlawful trade practices, and consumer

fraud." *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 983 (D.

Minn. 2011).

To satisfy Rule 9(b), "the complaint must plead the 'who, what, where, when, and

how' of the alleged fraud.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir.

2009) (citation omitted).  "Conclusory allegations that a defendant's conduct was

fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v.

Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted).  While

allegations pleaded upon information and belief typically do not satisfy Rule 9(b), such

allegations may suffice if facts constituting the alleged fraud are peculiarly within the

defendant's knowledge and the pleading includes a statement of facts upon which the

allegations are founded.  *Drobnak*, 561 F.3d at 783-84 (citing *Fla. State Bd. of Admin. v.

Green Tree Fin. Corp.*, 270 F.3d 645, 668 (8th Cir. 2001)).

## II.    Analysis

Plaintiffs assert seven counts against Defendant, including (1) violation of the

Indiana Deceptive Consumer Sales Act ("IDCSA"), (2) violation of the Minnesota

Prevention of Consumer Fraud Act ("MPCFA"), (3) breach of express warranty under

Indiana and Minnesota law, (4) breach of implied warranty under Indiana and Minnesota

law, (5) common law fraud under Indiana and Minnesota law, (6) breach of the duty of

good faith and fair dealing under Indiana and Minnesota law, and (7) unjust enrichment

under Indiana and Minnesota law.[5]  Because Plaintiffs "voluntarily concede their express warranty claims under Indiana law only (Count III) and good faith and fair dealing claims (Count VI)" (Pl. Opp. at 1 n.1), the Court grants Defendant's motion to dismiss as it relates to those claims.  Plaintiffs' remaining claims are analyzed below.

## A.     Fraud

Plaintiffs assert several fraud-related claims:  claims for common law fraud under Indiana and Minnesota law, (Compl. ¶¶ 116-19), violation of the Indiana Deceptive Consumer Sales Act (*id*. ¶¶ 80-92), and violation of the Minnesota Prevention of Consumer Fraud Act (*id*. ¶¶ 93-103).  Plaintiffs' allegations related to its fraud claims are as follows:  Plaintiffs allege that the front-mounted radiators on the Class vehicles are defectively designed and/or manufactured.  (*Id*. ¶ 2.)  Plaintiffs allege that, as a result of this defect, the radiators frequently become clogged with mud or debris while being operated as intended.  (*Id*.)  This clogging results in inadequate cooling, overheated engines, premature engine wearing, and potentially catastrophic engine failure and even fire.  (*Id*. ¶¶ 2-3; *see also id*. ¶¶ 20-21, 84-85, 96-97.)  Plaintiffs further allege that, even when the Class Vehicles are used in areas without mud, the radiators are often unable to

---

[5]     Plaintiffs assert claims under Indiana law—McQueen's home state—even though the Complaint alleges that McQueen purchased the Class Vehicle in West Virginia. (Compl. ¶ 17.)  For purposes of Defendant's motion to dismiss, Defendant assumed Indiana law governs McQueen's claims.  (Doc. No. 28 ("Def. Memo.") at 3 n.1.) Because neither party contests the application of Indiana law to McQueen's claims, for purposes of this motion, the Court assumes that Indiana law applies as well.  *See Merry v. Prestige Capital Markets, Ltd.*, 944 F. Supp. 2d 702, 713 (D. Minn. 2013); *Jordan Mfg. Co., Inc. v. Brittany Dyeing & Printing Corp.*, 822 F. Supp. 2d 848, 851 n.2 (N.D. Ind. 2011)

operate as intended.  (*Id*. ¶ 53.)  Plaintiffs allege that Defendant's advertising for its 2019 models, the Class Vehicles' Owner's Manuals, and public customer complaints demonstrate that Defendant had knowledge of the Radiator Defect.  (*Id*. ¶¶ 54-58, 68-70.) Despite this knowledge, Plaintiffs allege that Defendant failed to fully and truthfully disclose the true nature of the Radiator Defect to Plaintiffs and other Class Members.  (*Id*. ¶¶ 84-85.)

Because these claims share a common set of operative facts, the Court will first address the claims for common law fraud and then the Court will address the specific variations related to Plaintiffs' claims under the IDCSA and MPCFA.

### 1.  Common Law Fraud

In Count V, Plaintiffs assert claims for common law fraud under Indiana and Minnesota law.  (Compl. ¶¶ 116-19.)  Plaintiffs allege that Defendant made material omissions when Defendant did not fully and truthfully disclose the "true nature of the inherent design defect with the Class Vehicles' engines, which was not discoverable until after the [Class] Vehicles were purchased."  (*Id*. ¶ 117.)  Plaintiffs allege that they and other Class Members were fraudulently induced to lease and/or purchase the Class Vehicles with the Radiator Defect.  (*Id*.)  Plaintiffs allege that Defendant's omissions were made with knowledge of the defect and that Plaintiffs reasonably relied on these omissions.  (*Id*. ¶¶ 118-19.)

Defendant argues that Plaintiffs' claims for fraud should be dismissed for several reasons.  First, Defendant argues that it did not conceal any material facts.  Defendant argues that Plaintiffs admit that the Owner's Manual "explicitly warn[s] owners . . . not to

allow their radiators to become clogged with mud." (Def. Memo. at 9 (quoting Compl.

¶ 58).) Defendant also argues that the differences between the 2016/2017 models and the

2019 models was publicly disclosed in Defendant's advertising materials. (*Id*.)

Second, Defendant argues that it never had a duty to disclose that the front-

mounted radiator could become clogged with mud. (*Id*. at 10.) Defendant admits that

manufacturers are required to disclose unreasonable, foreseeable safety hazards, but

argues that the alleged safety hazards identified in the Complaint are merely

hypothesized. (*Id*.)

Under the common law, a party to a transaction generally "has no duty to disclose

material facts to the other party." *Graphic Commc'n Local 1B Health & Welfare

Fund A. v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014) (citing *Klein v.

First Edina Nat'l Bank*, 196 N.W.2d 619, 622 (1972)); *Fimbel v. DeClark*, 695 N.E.2d

125, 127 (Ind. Ct. App. 1998). However, special circumstances may trigger a duty to

disclose material facts. *Id*. Such special circumstances include: (1) a person who has a

confidential or fiduciary relationship with the other party, (2) a person who has special

knowledge of material facts, and (3) a person who speaks must say enough to prevent the

words communicated from misleading the other party. *Id*.; *Exec. Mgmt. Servs., Inc. v.

Fifth Third Bank*, Case No. 1:13-cv-582-WTL-MJD, 2016 WL 3881220, at *17 (S.D.

Ind. July 12, 2016). If such a duty exists, "concealment is fraudulent if a party conceals a

fact material to the transaction and peculiarly within its knowledge, knowing that the

other party acts on the presumption that no such fact exists." *Baer Gallery, Inc. v.

Citizen's Scholarship Found. of Am., Inc.*, 450 F.3d 816, 821 (8th Cir. 2006); *see also*

*Exec. Mgmt. Servs.*, 2016 WL 3881220, at \*17 ("[I]f plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentation.") (quotation and citation omitted).

Assuming all facts in Plaintiffs' Complaint to be true, and construing all reasonable inferences in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have failed to plead facts sufficient to state a plausible claim for fraud by omission.

First, the Court concludes that Plaintiffs fail to plead facts sufficient to infer that Defendant concealed the alleged Radiator Defect. Indeed, the facts pled in the Complaint indicate Defendant did the opposite—Defendant openly acknowledged the possibility of a front-mounted radiator becoming overheated due to mud. For example, the Complaint states that Yamaha's Owners' Manuals "***explicitly warn*** owners of the Class Vehicles not to allow their radiators to become clogged with mud." (Compl. ¶ 58 (emphasis added).) Indeed, the Yamaha Owner's Manual, which is quoted in the Complaint, states that "[t]he engine will tend to overheat if the radiator is caked with mud." (*Id*. ¶ 58; *see also* Doc. No. 30-2 at 8-68; Doc. No. 30-4 at 8-70.) Moreover, the Complaint states that, when Yamaha marketed its 2019 rear-mounted radiator, Yamaha stated that the rear-mounted radiator "not only reduces heat in the cabin, it remains clear of mud or debris build-up." (Compl. ¶ 56.) The Complaint further states that Yamaha advertises that the rear-mounted radiator "eliminat[es] the risk of clogging while driving through mud." (*Id*.

¶ 57.)  Based on these facts as alleged, the Court concludes that it is not reasonable to infer that Yamaha concealed the fact that the front-mounted radiator could become caked with mud or that Yamaha concealed the fact that such mud-caking could lead to overheating of the radiator.

Second, the Court concludes that Plaintiffs fail to plead facts sufficient to infer that facts related to the alleged Radiator Defect was peculiarly within the knowledge of Yamaha.  Instead, the facts pled in the Complaint indicate that the facts related to the alleged Radiator Defect were widely known by the time of Plaintiffs' purchases of the Class Vehicles.  For example, the Complaint includes "a small sampling of the many complaints made by Class Vehicles Owners" which were "posted as early as 2016." (Compl. ¶ 68.)  These complaints explicitly discuss the alleged Radiator Defect, including:

- "I was astonished how little mud it takes to clog it up;"

- "[W]e rode on Sunday in some pretty muddy conditions, and i [sic] ended up plugging up my radiator with mud and overheating it;"

- "Apparently after a day of ridding [sic] in very muddy conditions the radiator got plugged up;" and

- "Rode Brimstone this past weekend and had issues with overheating due to mud[ ] in the radiator."

(*Id*.)  Moreover, the Complaint references an article entitled "How to make your YXZ Race Ready" that states that "[o]ne of the biggest problems we found with the YXZ is the location of the stock radiator.  It is not conducive to racing or riding in any type of mud. It will clog and cause the engine to overheat quickly . . . ."  (*Id*. ¶ 69.)  In addition, a

company that markets an after-market relocation kit stated that overheating due to the location of the radiator was a "very common problem" that could be solved by "relocat[ing] the radiator to the rear." (*Id*. ¶ 70.) Thus, Plaintiffs' own allegations demonstrate that the existence of the alleged Radiator Defect was publicly discussed at least as early as 2016.

For these reasons, the Court concludes that Plaintiffs have failed to allege facts sufficient to plausibly state a claim for fraud-by-omission, and consequently, common law fraud. Accordingly, the Court grants Defendant's motion to dismiss as to Plaintiffs' claims for common law fraud. Because the Court concludes that Plaintiffs have failed to allege facts sufficient to allow the Court to infer a material omission occurred, the Court does not address whether special circumstances triggered a duty for Yamaha to disclose the Radiator Defect to Plaintiffs.

## 2.    Indiana Deceptive Consumer Sales Act

In Count I, Plaintiffs assert a claim for violation of the Indiana Deceptive Consumers Sales Act. (Compl. ¶¶ 80-92.) Plaintiffs allege that the sale and distribution of the Class Vehicles to McQueen and members of the Indiana Class constitutes "consumer transactions" as defined by the IDCSA. (Compl. ¶ 82.) Plaintiffs further allege that Yamaha "engaged in unlawful conduct in violation of the Indiana Deceptive Consumer Sales Act by making knowing and intentional omissions." (*Id*. ¶ 83.) Plaintiffs allege that Yamaha also "failed to reveal to Plaintiff McQueen and Indiana Class Members that such radiator clogging is the result of a manufacturing and/or material defect that was actually caused by Defendant." (*Id*. ¶ 84.) As a result, Plaintiffs

allege that McQueen and other Indiana Class Members were "fraudulently induced to purchase the Class Vehicles with the said Radiator Defect." (*Id*. ¶ 85.)

Under the IDSCA, a supplier of goods may not represent, among other things, that its goods have certain "performance, characteristics, accessories, uses, or benefits" that the goods do not have, and which the supplier "knows or should reasonably know" that the goods do not possess. Ind. Code § 24-5-0.5-3. Similarly, a supplier may not represent that its goods have "a particular standard, quality, grade, style, or model" when the supplier "knows or should reasonably know" otherwise. *Id*. In addition, the Indiana legislature amended the IDSCA in 2014 to include omissions. *Sims v. New Penn Fin.*, Case No. 3:15-cv-263, 2016 WL 6610835, at *5 (N.D. Ind. Nov. 8, 2016). A claim under the IDSCA must allege that a defendant engaged in one or more deceptive acts. *Ind. Code* § 24-5-0.5-4(a). These acts may be "uncured" deceptive acts or "incurable" deceptive acts. *See McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998).

An "uncured" deceptive act is a deceptive act "'with respect to which a consumer who has been damaged by such act has given notice to the supplier' but the supplier either fails to offer to cure the act within thirty days or does offer to cure the act but fails to cure within a reasonable time after the consumer accepts the offer." *Id*. (quoting Ind. Code § 24-5-0.5-2(a)(7)). An incurable deceptive act is "a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(a)(8).

Defendant argues that Plaintiffs' claim for a violation of the IDCSA should be dismissed because the location of the front-mounted radiator was visually observable,

was disclosed in the Owner's Manuals, and was also disclosed in public statements relating to the 2019 models. (Def. Memo. at 8.) Defendant further argues that, even if such disclosures had not been made, Yamaha had no duty to disclose that the front-mounted radiator could become clogged with mud or sand. (*Id*.) Finally, Defendant argues that Plaintiffs' IDSCA claim should be dismissed because Plaintiffs did not satisfy the IDSCA's notice requirement. (*Id*. at 12.)

Assuming all facts in Plaintiffs' Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have failed to plead enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570. As discussed above, Plaintiffs fail to plead facts sufficient to plausibly claim that Defendant knowingly or intentionally omitted material facts relating to the Radiator Defect. As the facts alleged in the Complaint make clear, Defendant explicitly acknowledged the consequences of mud-caking in its Owner's Manuals. Moreover, Defendant's advertisements openly discuss the advantages of a rear-mounted radiator over a front-mounted radiator in terms of risk of mud-caking and overheating. Thus, based on the facts alleged in the Complaint, the Court concludes that it is not a plausible inference that Defendant omitted material facts related to the Radiator Defect.

Accordingly, the Court grants Defendant's motion to dismiss as to Plaintiffs' claim for violation of the IDCSA. Because the Court concludes that Plaintiffs have failed to allege facts sufficient to allow the Court to infer a material omission occurred, the

Court does not address whether Yamaha had a duty to disclose to Plaintiffs or whether Plaintiffs satisfied the IDSCA's notice requirement.

### 3.      Minnesota Prevention of Consumer Fraud Act

In Count II, Plaintiffs assert a claim for violation of the Minnesota Prevention of Consumer Fraud Act.  (*Id.* ¶¶ 93-103.)  Plaintiffs allege that Defendant engaged in "unlawful conduct in violation of the MPCFA by making knowing and intentional omissions."  (*Id.* ¶ 96.)  Plaintiffs allege that Defendant "knowingly failed to disclose the manufacturing and/or material Radiator Defect in the Class Vehicles in order to secure the sale of the [Class] Vehicles, and to offer them at a premium price."  (*Id.*)  Plaintiffs further allege that Defendant "failed to reveal to Class members that such radiator clogging is the result of a manufacturing and/or material defect that was actually caused by Defendant."  (*Id.* ¶ 97.)  As a result, Plaintiffs allege that Krautkramer and other Minnesota Class Members were "fraudulently induced to purchase the Class Vehicles with the said Radiator Defect."  (*Id.* ¶ 98.)

To state a claim under Minnesota's Consumer Fraud Act, a plaintiff "need only plead that the defendant engaged in conduct prohibited by the [CFA] and that the plaintiff was damaged thereby."  *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 693 (Minn. 2014).  The CFA prohibits "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice."  Minn. Stat. § 325F.69, subd. 1 (2017).  Omission-based claims are actionable under the CFA only "when special circumstances exist that trigger a legal or equitable duty to disclose the omitted facts."  *Graphic Commc'ns*, 850 N.W.2d at 695.  Minnesota

courts have identified a non-exclusive set of special circumstances that trigger such a duty:  (1) "a confidential or fiduciary relationship with the other party;" (2) "special knowledge of material facts to which the other party does not have access;" and (3) when a person is speaking, "they must say enough to prevent the words communicated from misleading the other party."  *Id.* (citing *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 622 (Minn. 1972)).

Defendant argues that Plaintiffs' claim for a violation of the MCFPA should be dismissed because the location of the front-mounted radiator was visually observable, was disclosed in the Owner's Manuals, and was also disclosed in public statements relating to the 2019 models.  (Def. Memo. at 8.)  Defendant further argues that, even if such disclosures had not been made, Yamaha had no duty to disclose that the front-mounted radiator could become clogged with mud or sand.  (*Id.*)  Finally, Defendant argues that, even if there was a duty to disclose, the duty did not belong to Yamaha because Plaintiffs did not contract with Yamaha.  (*Id.* at 12.)

Assuming all facts in Plaintiffs' Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have failed to plead enough facts to state a claim to relief that is plausible on its face.  *See Twombly*, 550 U.S. at 570.  As discussed above, Plaintiffs fail to plead facts sufficient to plausibly claim that Defendant knowingly or intentionally omitted material facts relating to the Radiator Defect.  As the facts alleged in the Complaint make clear, Defendant explicitly acknowledged the consequences of mud-caking in its Owner's Manuals.  Moreover, Defendant's advertisements openly discuss the advantages of a rear-

mounted radiator over a front-mounted radiator in terms of risk of mud-caking and overheating.  Thus, based on the facts alleged in the Complaint, the Court concludes that it is not a plausible inference that Defendant omitted material facts related to the Radiator Defect.

Accordingly, the Court grants Defendant's motion to dismiss as to Plaintiffs' claim for violation of the MPCFA.  Because the Court concludes that Plaintiffs have failed to allege facts sufficient to allow the Court to infer a material omission occurred, the Court does not address whether Yamaha had a duty to disclose to Plaintiffs.

### B.      Breach of Express Warranty

In Count III, Plaintiffs assert a claim for breach of express warranty.  (Compl. ¶¶ 104-10.)  The 2016 Owner's Manual states:

> Yamaha Motor Corporation, U.S.A. hereby warrants that new Yamaha Side x Side models purchased from an authorized Yamaha Side x Side dealer in the continental United States will be free from defects in material and workmanship for the period of time stated herein, subject to certain stated limitations.

(Doc. No. 30-3 at 11-6; *see also* Compl. ¶ 105.)  The 2016 Owner's Manual further states:

> Yamaha Motor Corporation, U.S.A. makes no other warranty of any kind, expressed or implied.  All implied warranties of merchantability and fitness for a particular purpose which exceed the obligations and time limits stated in this warranty are hereby disclaimed by Yamaha Motor Corporation, U.S.A. and excluded from this warranty.

(*Id.*)

Plaintiffs allege that Yamaha expressly warranted that the Class Vehicles were of high quality and would work properly. (*Id.* ¶ 105.) Plaintiffs further allege that Yamaha expressly warranted that the Class Vehicles would be "free from defects in material and workmanship." (*Id.* (citation omitted).) Plaintiffs allege that Yamaha breached these warranties by selling Class Vehicles with "known radiator location problems" that "fail prematurely and/or fail to function properly." (*Id.* ¶ 106.) Plaintiffs further allege that Yamaha's attempt to disclaim or limit these express warranties is unconscionable and unenforceable because Yamaha knowingly sold a defective product and continues to charge Class Members for relocating the radiators to the rear of the vehicle. (*Id.* ¶ 108.)

Defendant argues that Plaintiffs' claim for breach of express warranty should be dismissed because Yamaha's limited express warranty only covers defects in material and workmanship, not defects in design. (Def. Momo. at 13.) Defendant argues that the Complaint admits that the alleged defect is a defect in design because Plaintiffs allege that Krautkramer resolved the alleged issue by relocating the radiator. (*Id.*) Defendant also argues that Plaintiffs' claim should be dismissed because the Complaint does not allege that Plaintiffs presented their vehicles to Yamaha for warranty service or repairs. (*Id.* at 14.) Defendant further argues that there is no express warranty that the Class Vehicles would be of high quality and would work properly because Yamaha disclaimed extra-contractual express warranties. (*Id.* at 15.) Moreover, Defendant argues that Yamaha never made any affirmation of fact or promise to Plaintiffs that the Class Vehicles would be high quality and would work properly. (*Id.* at 16.)

19

Assuming all facts in Plaintiffs' Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have sufficiently pled enough facts to state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570.

First, the Court concludes that Plaintiffs' Complaint alleges sufficient facts, along with the reasonable inferences from those facts construed in the light most favorable to Plaintiffs, to plausibly claim that the Radiator Defect is a manufacturing defect covered by the express warranty. The Complaint alleges that the front-mounted radiators on the Class Vehicles are "defectively designed and/or manufactured." (Compl. ¶ 2; *see also id*. ¶¶ 3, 61, 108.) The Complaint alleges that the front-mounted radiators "frequently become clogged with mud or debris while being operated as intended, resulting in inadequate cooling, overheated engines, and potentially catastrophic engine failure and even fire." (*Id*.) The Complaint further alleges that "relocation is actually necessitated because of Defendant's defective product." (*Id*. ¶ 108.) While Defendant notes that the Complaint alleges that relocation of the radiator to a rear-mounted position resolved the alleged issue, it does not follow that the alleged defect is solely a defect in a design.[6] The

---

[6] Defendant also points to Plaintiffs' characterization of the Radiator Defect as a "design defect" in their opposition brief. (Doc. No. 36 at 11.) However, the Court concludes that the Complaint alleges facts sufficient to assert a manufacturing defect and, thus, finds that such characterizations are not determinative at this stage. *See Alin v. Am. Honda Motor Co.*, Case No. 08-CV-4825 KSH, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) ("At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives.").

determination as to whether the Radiator Defect is a defect in design or a defect in manufacturing is one better determined through discovery. *See Persad v. Ford Motor Co.*, Case No. 17-CV-12599, 2018 WL 3428690, at *4 (E.D. Mich. July 16, 20180) ("Discovery is needed to determine whether the fumes are also entering the compartment due to defects in the manufacturing process or particular materials that were used in the exhaust or HVAC systems."); *Braden v. Tornier, Inc.*, Case No. 09-CV-5529 RJB, 2009 WL 3188075, at *3 (W.D. Wash. Sept. 30, 2009) ("Plaintiffs properly point out that whether a product's defect was due to its design or manufacture is the sort of the information that is gained in discovery.").  At this stage in the litigation, the Court concludes that the Complaint alleges sufficient facts to plausibly claim that the Radiator Defect is a manufacturing defect covered by the express warranty.

Second, the Court concludes that Plaintiffs' Complaint alleges sufficient facts, along with the reasonable inferences from those facts construed in the light most favorable to Plaintiffs, to plausibly claim that Plaintiffs fulfilled the purported requirement to present Krautkramer's vehicle to Yamaha for warranty service or repairs. The Complaint alleges that Krautkramer brought the vehicle to the dealer and purchased an aftermarket radiator relocation kit from his dealer to resolve the Radiator Defect. (Compl. ¶¶ 33, 35.)  The Complaint also alleges that Krautkramer contacted Yamaha to inquire about rebates and compensation for the new radiator and labor, but was ultimately unsuccessful.  (*Id.* ¶ 34.)  Accepting these facts as true, the Court concludes that Plaintiffs have pled enough facts to plausibly claim that Krautkramer presented his vehicle for warranty service or repairs as purportedly required by the express warranty.

Third, the Court concludes that Plaintiffs' Complaint has sufficiently pled the unconscionability doctrine at this stage of the litigation.  Plaintiffs' Complaint clearly alleges that Yamaha's attempt to disclaim or limit express warranties is unconscionable. (Compl. ¶¶ 108-09.)  "When it is claimed . . . [a] contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."  Minn. Stat. § 336.2-302. Accordingly, to the extent the dismissal of Count III depends on a determination of unconscionability, the Court defers a decision regarding the applicability of the unconscionability doctrine until the parties have had the opportunity to submit evidence regarding the disclaimer's commercial setting, purpose, and effect.  *See In re Hardieplank Fiber Cement Siding Litig.*, Case No. 12-MD-2359, 2013 WL 3717743, at *8 (D. Minn. July 15, 2013).

For the reasons discussed above, the Court denies Defendant's motion as to Plaintiffs' claim for breach of express warranty under Minnesota law.  Because Plaintiffs have voluntarily surrendered their claim for breach of express warranty under Indiana law, the Court grants Defendant's motion as to Plaintiffs' claim for breach of express warranty under Indiana law.

### C.    Breach of Implied Warranty

In Count IV, Plaintiffs assert claims for breach of implied warranty under Indiana and Minnesota law.  (Compl. ¶¶ 111-15.)  Plaintiffs allege that a warranty that the Class Vehicles were in merchantable condition is implied by law.  (*Id.* ¶ 112.)  Plaintiffs further allege that the Class Vehicles were not in merchantable condition at the time of sale and

are not fit for the ordinary purpose for which all-terrain side-by-side vehicles are used. (*Id*. ¶ 113.)  In particular, Plaintiffs allege that the Class Vehicles are inherently defective due to their front-mounted radiators that are prone to becoming clogged with mud.  (*Id*.) Plaintiffs allege that Defendant was provided notice of these issues by both informal and formal complaints.  (*Id*. ¶ 114.)

Defendant argues that Plaintiffs' claim for breach of implied warranty should be dismissed for two reasons.  First, Defendant argues that Plaintiffs' claims should be dismissed because Yamaha disclaimed all implied warranties of merchantability and fitness.  (Def. Memo. at 17-18.)  Second, Defendant argues that the Class Vehicles were merchantable and Plaintiffs are merely displeased 'because they had to clean the radiators more than they expected at the time of purchase."  (*Id*. 19-20.)

An implied warranty of merchantability requires that goods be "fit for the ordinary purposes for which such goods are used."  *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 826 (D. Minn. 2010); *Smith v. Nexus RVs, LLC*, Case No. 3:17-cv-00815 DRL/MGG, 2020 WL 3403178, at *7 (N.D. Ind. June 19, 2020) ("Under Indiana Code § 26-1-2-314(2)(c), an implied warranty of merchantability requires that the goods be fit for the ordinary purposes for which such goods are used.").  An implied warranty of merchantability is breached on a showing that a "'product is defective to a normal buyer making ordinary use of the product.'"  *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 860 (D. Minn. 2012) (quoting *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 816 (Minn. Ct. App. 2010)).

A "written implied warranty of merchantability may be excluded or modified by using language that mentions merchantability and is conspicuous."   *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1321-22 (D. Minn. 2018) (citing Minn. Stat. § 336.2-316(2)); *see also Indiana Farm Bureau v. CNH Indus. Am., LLC*, 130 N.E.3d 604, 611 (Ct. App. Ind. 2019).  In this case, the Owner's Manuals state, in a section entitled "LIMITED WARRANTY," that:

> Yamaha Motor Corporation, U.S.A. makes no other warranty of any kind, expressed or implied.  All implied warranties of merchantability and fitness for a particular purpose which exceed the obligations and time limits stated in this warranty are hereby disclaimed by Yamaha Motor Corporation, U.S.A. and excluded from this warranty.

(Doc. No. 30-2 at 11-6.)  Plaintiffs argue that Defendant did not disclaim implied warranties because the Plaintiffs were not provided with the Owner's Manual (which contains the above-referenced language) prior to purchasing their Class Vehicles and because Yamaha's disclaimer is not sufficiently conspicuous.  (Pl. Opp. at 16-17.) Plaintiffs also argue that Yamaha's disclaimer is unconscionable because Plaintiffs did not have the ability to negotiate the terms and Yamaha concealed the Radiator Defect. (*Id.* at 18.)

Assuming all facts in Plaintiffs' Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have sufficiently pled enough facts to state a claim to relief that is plausible on its face.  *See Twombly*, 550 U.S. at 570.

First, the Court concludes that Plaintiffs have alleged sufficient facts to plausibly plead that Defendant breached an implied warranty of merchantability.  Plaintiffs allege that Defendant concealed the Radiator Defect that caused the Class Vehicles' engines to clog with mud, overheat, and prematurely wear.  (Compl. ¶ 3.)  Plaintiffs allege that the mud- or sand-clogged radiator interferes with McQueen and Krautkramer's use and enjoyment of the vehicle due to regular overheating.  (*Id*. ¶¶ 21, 30.)  Plaintiffs allege that McQueen attempts to flush the radiator when it clogs, but the radiator still overheats and clogs.  (*Id*.)  Plaintiffs allege that Krautkramer was forced to purchase an aftermarket radiator relocation kit to resolve the radiator issue.  (*Id*. ¶ 33.)  Plaintiffs allege that, even when Class Vehicles are used in areas without mud, the radiators are often unable to operate as intended, causing the Class Vehicles' engines to overheat.  (*Id*. ¶ 53.)  Moreover, Plaintiffs allege that the Class Vehicles are intended to be used for activities such as mud bogging and for use on a wide variety of rough terrains, including muddy trails.  (*Id*. ¶ 58.)  Assuming these facts to be true, and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have alleged facts that allow the Court to plausibly conclude that the Defendant breached the implied warranty of merchantability when it sold Class Vehicles with the Radiator Defect.

Defendant's reliance on *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331 (Tex. Ct. App. 2003) is misplaced.  In *Polaris*, the plaintiff alleged that the jet skis' lack of off-throttle steering or maneuvering capabilities rendered the jet skis unmerchantable and unfit for their ordinary purpose.  119 S.W.3d at 335.  The jet skis, however, had safety-

warning decals that warned that the jet skis did not have brakes and that they could not be steered without applying throttle. *Id.* at 340. The Texas Court of Appeals noted that the plaintiff "never averred that he got less than what he paid for—just that he would have paid ***more*** for the safety features if given the opportunity." *Id.* at 340 (emphasis in original). Thus, the court held that the plaintiff "got exactly what he paid for—a water vehicle fit for recreational use." *Id.*

By contrast, Plaintiffs allege that they did not get what they paid for when they purchased the Class Vehicles. Plaintiffs allege that the Class Vehicles are intended for use in mud bogging and for use on muddy trails. Plaintiffs allege that the Radiator Defect renders the Class Vehicles unfit for these purposes. Plaintiffs also allege that Defendant did not provide any warnings related to the Radiator Defect. Assuming these facts to be true, as is appropriate at this stage, the Court concludes that Plaintiffs have alleged a claim that is factually distinguishable from *Polaris*.

Second, the Court concludes that Plaintiffs have sufficiently pled the unconscionability doctrine at this stage of the litigation. As discussed above, Plaintiffs clearly allege that Yamaha's attempt to disclaim warranties is unconscionable.[7] (Compl. ¶¶108-09.) Plaintiffs allege that Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the Radiator Defect. (*Id.* ¶ 108.) At this stage, the Court finds that these

---

[7]      While Plaintiffs' allegations are contained under their claim for breach of express warranty, Plaintiffs' claim for breach of implied warranty incorporates these paragraphs by reference. (*Id.* ¶ 111.)

allegations are sufficient for Plaintiffs' claim to survive dismissal.  *See Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1321-22 (D. Minn. 2018) ("[T]his Court permitted a plaintiff's claim to proceed past the motion-to-dismiss stage, finding that the plaintiff had pleaded sufficient facts regarding unconscionability.  Notably, the plaintiff had alleged that the product failed due to a defective design of which the manufacturer had knowledge.").  Accordingly, to the extent the dismissal of Count IV depends on a determination of unconscionability, the Court defers a decision regarding the applicability of the unconscionability doctrine until the parties have had the opportunity to submit evidence regarding the disclaimer's commercial setting, purpose, and effect.  *See In re Hardieplank Fiber Cement Siding Litig.*, 2013 WL 3717743, at *8.

For the reasons discussed above, the Court denies Defendant's motion as to Plaintiffs' claims for breach of implied warranty.

### D.    Unjust Enrichment

In Count VII, Plaintiffs assert claims for unjust enrichment under Minnesota and Indiana law.  (Compl. ¶¶ 124-27.)  To establish a claim for unjust enrichment under Minnesota law, a plaintiff must demonstrate "that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit."  *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001).  "[T]o ensure that unjust enrichment is not used to reward a bad bargain, Minnesota courts require proof that 'a benefit was conferred unknowingly or unwillingly.'"  *Holmes v. Torguson*, 41 F.3d 1251, 1256 (8th Cir. 1994) (quoting *Galante v. Oz, Inc.*, 379 N.W.2d 723, 726 (Minn. Ct. App. 1986)).

The Complaint alleges that Plaintiffs and members of the Class conferred a benefit on Defendant.  (Compl. ¶ 125.)  The Complaint also alleges that Defendant had knowledge that this benefit was conferred upon it.  (*Id*. ¶ 126.)  Finally, the Complaint alleges that Defendant has been and continues to be unjustly enriched at the expense of Plaintiffs, and its retention of this benefit would be inequitable.  (*Id*. ¶ 127.)

Defendant argues that Plaintiffs' claims for unjust enrichment should be dismissed because the Complaint fails to allege that Defendant illegally benefitted in any way. (Def. Memo. at 23.)  Defendant argues that Plaintiffs cannot justify equitable relief because the "only reasonable conclusion is that the purchase price of Plaintiffs' Side by Sides reflected the fact that the 2016 and 2017 models still had the radiator in the front." (*Id*. at 24.)  Finally, Defendant argues that Plaintiffs' claims for unjust enrichment should be dismissed because Plaintiffs have an adequate remedy at law.  (*Id*. at 24-25.)

Assuming all facts in Plaintiffs' Complaint to be true and construing all reasonable inferences from those facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have sufficiently pled enough facts to state a claim to relief that is plausible on its face.  *See Twombly*, 550 U.S. at 570.  Plaintiffs have alleged that Defendant violated express and implied warranties.  At this stage, the Court concludes that the Plaintiffs may pursue alternative theories at law and in equity.  *See Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012) (holding that Plaintiffs could plead a claim for unjust enrichment in the alternative); *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 763 F. Supp. 2d 875, 880 (D. Minn. 2009) (holding that, at the pleading stage, a plaintiff was "permitted to pursue alternative theories that would provide remedies at law

28

and equity").  Because the Plaintiffs' alleged facts fulfill the elements of unjust enrichment, the Court denies Defendant's motion as to Plaintiffs' unjust enrichment claims.

**CONCLUSION**

For the reasons discussed above, the Court finds that Plaintiffs have failed to allege sufficient facts to state a plausible claim for common law fraud under Indiana law and Minnesota law, a violation of the Indiana Deceptive Consumer Sales Act, and a violation of the Minnesota Prevention of Consumer Fraud Act.  At this stage in the litigation, the Court finds that Plaintiffs have alleged sufficient facts to state plausible claims for breach of expressed warranty, breach of implied warranty, and unjust enrichment.  The Court notes, however, that the survival of claims at this stage does not necessarily mean that the surviving claims will ultimately prevail on the merits.  Rather, the Court merely finds that Plaintiffs have pled sufficient facts, accepted as true, to survive the motion to dismiss stage.

**ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. No. [26]) is **GRANTED IN PART** and **DENIED IN PART** consistent with the memorandum above as follows:

1.      The Court **GRANTS** Defendant's Motion to Dismiss regarding Plaintiffs' claims for violation of the Indiana Deceptive Consumer Sales Act (Count I);

29

2.      The Court **GRANTS** Defendant's Motion to Dismiss regarding Plaintiffs' claims for violation of the Minnesota Prevention of Consumer Fraud Act (Count II);

3.      The Court **GRANTS** Defendant's Motion to Dismiss regarding Plaintiffs' claim for a breach of express warranty under Indiana law (Count III).  The Court **DENIES** Defendant's Motion to Dismiss regarding Plaintiffs' claim for a breach of express warranty under Minnesota law;

4.      The Court **DENIES** Defendant's Motion to Dismiss regarding Plaintiffs' claims for a breach of implied warranty (Count IV);

5.      The Court **GRANTS** Defendant's Motion to Dismiss regarding Plaintiffs' claims for common law fraud (Count V);

6.      The Court **GRANTS** Defendant's Motion to Dismiss regarding Plaintiffs' claims for breach of the duty of good faith and fair dealing (Count VI); and

7.      The Court **DENIES** Defendant's Motion to Dismiss regarding Plaintiffs' claims for unjust enrichment (Count VII).


Dated:  September 21, 2020                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge

30