## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| ZACH McQUEEN and FRED KRAUTKRAMER, KYLE PRICE, CHRIS BURLING and CHRIS SMALLEY, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>  vs.<br><br>YAMAHA MOTOR CORPORATION, U.S.A.,<br><br>    Defendant. | Civ. No.: 19-cv-2559 (DWF/BRT)<br><br>CLASS ACTION<br><br>**THIRD AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiffs Zach McQueen, Fred Krautkramer, Kyle Price, Chris Burling and Chris Smalley bring this action against Defendant Yamaha Motor Corporation U.S.A. ("Defendant" or "Yamaha"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

## **INTRODUCTION**

1.  This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners of model years 2016-18 Yamaha Pure Sport YXZ1000R, YXZ1000SE, YXZ1000SS, and YXZ1000SS SE Side-by-Side vehicles, equipped with radiators mounted on the front of the

vehicles ("Class Vehicles").[1]

2.      The front-mounted radiators on the Class Vehicles are defectively designed and/or manufactured and frequently become clogged with mud or debris while being operated as intended, resulting in inadequate cooling, overheated engines, and potentially catastrophic engine failure and even fire ("Radiator Defect"). This dangerous safety defect can cause harm to the operators of the Class Vehicles, as well as passengers.

3.      This action arises from Yamaha's failure, despite its longstanding knowledge of this material manufacturing and/or design defect, to disclose to Plaintiffs and other consumers that the Class Vehicles are predisposed to the Radiator Defect, causing the Vehicles' engines to overheat – resulting in both decreased performance and premature wear of the engines, engine bearings and other internal engine components as well as an increased cost of repair and remediation. Such premature failures can also result in catastrophic engine failure, engine stalling events, engine fires and other dangerous situations for occupants of the Class Vehicles and others in close proximity.

4.      Yamaha purports to be "the leader in providing you an inspirational experience to explore new terrain, new vehicles, and exciting new destinations.

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

Yamaha designs, engineers, manufactures and tests its ATVs and Side-by-Side vehicles in the Real World, fueling your off-road passion with superior Capability, Comfort and Confidence!"[2]

5.     Not only did Yamaha actively conceal the fact that the Class Vehicles contain the Radiator Defect (and therefore require additional expenses to repair and/or remedy), it failed to reveal that the existence of this defect impairs the intended use, and would diminish the intrinsic and resale value of the Class Vehicles.

6.     Yamaha has long been aware of the Radiator Defect. Despite its longstanding knowledge of this defect, Yamaha has been unwilling to adequately repair the Class Vehicles when the defect manifests, and/or to pay for the relocation of the radiators to a more appropriate location on the Class Vehicles.

7.     Many owners of Class Vehicles have communicated with Defendant and its agents to request that Yamaha remedy and/or address the Radiator Defect and/or resultant damage at no expense. Defendant has failed and/or refused to do so. For customers whose Vehicles are within the six-month warranty period, Yamaha has done nothing to address or correct the Radiator Defect when it manifests in the Class Vehicles.

---

[2] *Realize Your Adventure*, YAMAHA, https://www.yamahamotorsports.com/realize-your-adventure-home (last visited Sept. 5, 2019).

8.      Despite notice and knowledge of the Radiator Defect from the numerous consumer complaints it has received, information received from Yamaha dealerships, pre-sale durability testing, and its own internal records, Yamaha has not recalled the Class Vehicles to repair the Radiator Defect, offered its customers a suitable repair free of charge, or offered to reimburse its customers who have incurred out-of-pocket expenses to address the Radiator Defect.

9.      As a result of Yamaha's breaches of express and implied warranties , owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property.

10.     Had Plaintiffs and other Class members known about the Radiator Defect at the time of purchase, they would not have purchased the Class Vehicles, or would have paid substantially less for the Class Vehicles.

11.     As a result of the Radiator Defect and the considerable monetary costs associated with attempting to address such defect, Plaintiffs and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Yamaha's conduct.

12.     Accordingly, Plaintiffs bring this action to redress Yamaha's misconduct and to seek recovery for Defendant's breach of express warranty, breach of implied warranty, violations of the Song-Beverly Consumer Warranty Act and, alternatively, unjust enrichment.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Yamaha transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, Yamaha has advertised in this district and has received substantial revenue and profits from its sales of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

15.     This Court has personal jurisdiction over Yamaha because it has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the district of Minnesota and throughout the United States.

## THE PARTIES

### Plaintiff Zach McQueen

16.     Plaintiff Zach McQueen is a citizen of the State of Indiana and resides in Cambridge City, Indiana.

17.     On or about October 18, 2019, Plaintiff McQueen purchased a used 2017 YXZ1000R Pure Sport (VIN# 5Y4ANO8Y2HA101263) from Lemon & Barrett's PowerSports, an authorized Yamaha dealer and repair center located in Parkersburg, West Virginia, for approximately $13,500. Prior to purchasing his Yamaha vehicle, Plaintiff McQueen reviewed various online advertising from Yamaha. None of that advertising disclosed the Radiator Defect.

18.     Since purchasing his YXZ1000R Pure Sport, Plaintiff McQueen has added approximately $5,000 of accessories to his vehicle, including a cargo box, harnesses, bumpers and a trunk.

19.     Plaintiff McQueen's Yamaha came with the radiator mounted on its front side.

20.     Upon riding his Class Vehicle, Plaintiff McQueen's radiator frequently becomes clogged with mud or sand, depending on where he rides it.

21.     The mud- or sand-clogged radiator on Plaintiff McQueen's Class Vehicle interferes with his use and enjoyment of the vehicle because it regularly overheats. Plaintiff McQueen has attempted to flush the radiator with water each

time that it clogs, but it continues to overheat and becomes clogged repeatedly. Efforts to clean the sand out of the radiator cause it to harden into a cement-like substance.

22.     Plaintiff McQueen purchased his vehicle (which he still owns) for recreational use.

23.     Plaintiff McQueen purchased an extended warranty that covers his vehicle until 2022.

24.     Plaintiff McQueen has suffered an ascertainable loss as a result of Defendant's breaches of express and implied warranties and/or misrepresentations associated with the Radiator Defect, including, but not limited to, out-of-pocket loss associated with the Radiator Defect and future attempted repairs and diminished value of his vehicle.

25.     Neither Defendant, nor its agents, dealers or other representatives informed Plaintiff McQueen of the existence of the Radiator Defect prior to his purchase of his Class Vehicle.

**Plaintiff Fred Krautkramer**

26.     Plaintiff Fred Krautkramer is a citizen of the State of Minnesota and resides in Blaine, Minnesota.

27.     On or about March 23, 2019, Plaintiff Fred Krautkramer purchased a new 2016 YXZ1000R Yamaha Side-by-Side Pure Sport (VIN#

- 7 -

5Y4AN07Y2GA101134) from Ecofun Motorsports, an authorized Yamaha dealer

and repair center located in Forest Lake, Minnesota for approximately $17,000.

Prior to purchasing the Yamaha vehicle, Plaintiff Krautkramer reviewed various

online advertising from Yamaha. None of that advertising disclosed the Radiator

Defect.

28.     Plaintiff Krautkramer's Yamaha came with the radiator mounted on

its front side.

29.     Upon riding his Class Vehicle, Plaintiff Krautkramer's radiator began

to get clogged with mud.

30.     The mud-clogged radiator on Plaintiff Krautkramer's Class Vehicle

interfered with his use and enjoyment of the vehicle because it regularly

overheated. Plaintiff Krautkramer has attempted to flush the radiator with water

but it continues to overheat.

31.     Plaintiff Krautkramer purchased his vehicle (which he still owns) for

recreational use.

32.     On or about late June or early July 2019, Plaintiff Krautkramer

contacted Ecofun Motorsports about the radiator issues that he was experiencing.

However, Ecofun Motorsports stated that they were not aware of the radiator issue.

33.     After experiencing frequent overheating, Plaintiff Krautkramer

purchased an aftermarket radiator relocation kit from his Yamaha dealer to resolve

the issue which cost him approximately $2,000 with installation fees.

34.     Plaintiff Krautkramer also contacted Defendant around the same time to inquire about rebates and compensation for the new radiator and labor that was required for his vehicle. Plaintiff Krautkramer corresponded with Yamaha Customer Service and requested to have a manager contact him. On July 9, 2019, Plaintiff Krautkramer received a voicemail from a customer service supervisor. Plaintiff Krautkramer made repeat attempts to call her back, leaving several messages, and also sent an email and mailed a letter but never received any further communication from Defendant.

35.     Plaintiff Krautkramer's Class Vehicle was still within the warranty period when he contacted Yamaha and also when he brought it to the local dealer to have the radiator relocated.

36.     Plaintiff Krautkramer has suffered an ascertainable loss as a result of Defendant's breaches of express and implied warranties and/or misrepresentations associated with the Radiator Defect, including, but not limited to, out-of-pocket loss associated with the Radiator Defect and future attempted repairs and diminished value of his vehicle.

37.     Neither Defendant, nor its agents, dealers or other representatives informed Plaintiff Krautkramer of the existence of the Radiator Defect prior to

purchase.

**Plaintiff Kyle Price**

38.     Plaintiff Kyle Price is a citizen of the State of Ohio and resides in
Mount Victory, Ohio.

39.     On or about November 14, 2017, Plaintiff Price purchased a Yamaha
XYZ1000 ETS (VIN# 5Y4AN12Y2HA101262) from Dan's Cycle Sales, Inc., an
authorized Yamaha dealer and repair center located in Tipton, Indiana, for
approximately $18,000. Prior to purchasing his Yamaha vehicle, Plaintiff Price
reviewed various online advertising from Yamaha. None of that advertising
disclosed the Radiator Defect.

40.     Plaintiff Price's Yamaha came with the radiator mounted on its front
side.

41.     Upon riding his Class Vehicle, Plaintiff Price's radiator frequently
becomes clogged with mud, depending on where he rides it.

42.     The mud-clogged radiator on Plaintiff Price's Class Vehicle interferes
with his use and enjoyment of the vehicle because it regularly overheats. Plaintiff
Price has attempted to flush the radiator with water each time that it clogs, but it
continues to overheat and becomes clogged repeatedly.

43.     Plaintiff Price purchased his vehicle (which he still owns) for

recreational use.

44.    Plaintiff Price has suffered an ascertainable loss as a result of

Defendant's breaches of express and implied warranties and/or misrepresentations

associated with the Radiator Defect, including, but not limited to, out-of-pocket

loss associated with the Radiator Defect and future attempted repairs and

diminished value of his vehicle.

45.    Neither Defendant, nor its agents, dealers or other representatives

informed Plaintiff Price of the existence of the Radiator Defect prior to his

purchase of his Class Vehicle.

**<u>Plaintiff Chris Burling</u>**

46.    Plaintiff Chris Burling is a citizen of the State of California and

resides in San Bernardino, California.

47.    In or about 2017, Plaintiff Burling purchased a 2017 Yamaha

YXZ1000SS (VIN# 5Y4AN08Y5HA102195) from John Burr Cycles a formerly

authorized Yamaha dealer and repair center located in Fontana California for

approximately $22,000.  In approximately 2018, John Burr Cycles announced that

it was closing its operation.

48.    Prior to purchasing his Yamaha vehicle, Plaintiff Burling reviewed

various online advertising from Yamaha. None of that advertising disclosed the

Radiator Defect.

49.     Plaintiff Burling's Yamaha came with the radiator mounted on its front side.

50.     Upon riding his Class Vehicle, Plaintiff Burling's radiator regularly became overheated, sometimes clogging with mud.

51.     The overheated or mud-clogged radiator on Plaintiff Burling's Class Vehicle interferes with his use and enjoyment of the vehicle. Plaintiff Burling has attempted to flush the radiator with water each time that it clogs, but it continues to overheat and becomes clogged repeatedly.

52.     Plaintiff Burling purchased his vehicle (which he still owns) for recreational use.

53.     Plaintiff Burling contacted John Burr Cycles to notify them of the overheating and clogging issues, but was advised that the issues would not be covered under his warranty.

54.     Plaintiff Burling has suffered an ascertainable loss as a result of Defendant's breaches of express and implied warranties and/or misrepresentations associated with the Radiator Defect, including, but not limited to, out-of-pocket loss associated with the Radiator Defect and future attempted repairs and diminished value of his vehicle.

55.     Neither Defendant, nor its agents, dealers or other representatives

informed Plaintiff Burling of the existence of the Radiator Defect prior to his purchase of his Class Vehicle.

**Plaintiff Chris Smalley**

56.     Plaintiff Chris Smalley is a citizen of the State of Washington and resides in Bremerton, Washington.

57.     On or about January 19, 2016, Plaintiff Smalley purchased a 2016 Yamaha YXZ1000SE (VIN# 5Y4AN01YXGA101388) from Brothers Powersports, an authorized Yamaha dealer and repair center located in Bremerton, Washington for approximately $22,912.

58.     Prior to purchasing his Yamaha vehicle, Plaintiff Smalley reviewed various online advertising from Yamaha. None of that advertising disclosed the Radiator Defect.

59.     Plaintiff Smalley's Yamaha came with the radiator mounted on its front side.

60.     Upon riding his Class Vehicle, Plaintiff Smalley's radiator regularly became overheated, sometimes filling with sand.

61.     The overheated radiator on Plaintiff Smalley's Class Vehicle interfered with his use and enjoyment of the vehicle, so he contacted Brothers Powersports and requested that it remedy the overheating occurring in his vehicle, but was advised that the issues would not be covered because his warranty was no

longer in effect.

62.     On or about March 28, 2017, Plaintiff Smalley purchased a radiator replacement kit from Hess Motor Sports for approximately $900, and installed it himself.

63.     Since relocating his radiator to the rear of his Class Vehicle, Plaintiff Smalley has not experienced overheating.

64.     Plaintiff Smalley purchased his vehicle (which he still owns) for recreational use.

65.     Plaintiff Smalley has suffered an ascertainable loss as a result of Defendant's breaches of express and implied warranties and/or misrepresentations associated with the Radiator Defect, including, but not limited to, out-of-pocket loss associated with the Radiator Defect and future attempted repairs and diminished value of his vehicle.

66.     Neither Defendant, nor its agents, dealers or other representatives informed Plaintiff Smalley of the existence of the Radiator Defect prior to his purchase of his Class Vehicle.

**Defendant**

67.     Defendant, Yamaha Motor Corporation U.S.A., is "a leading distributor and manufacturer in the motorsports market, with the most diversified line of products in America. Yamaha products are recognized the world over for

superior quality in design, technology, craftsmanship and customer services."[3]

68.     Defendant does business in the United States, including design, manufacturing, distribution, and/or servicing of its products, including the Class Vehicles.

69.     Defendant is incorporated under the laws of California with its principal place of business located at 1270 Chastain Road in Kennesaw, Georgia.

70.     Founded in 1955, Yamaha Motor Corporation U.S.A. is a wholly owned subsidiary of Japan-based Yamaha Motor Corporation, Ltd.[4]

71.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the radiator locations within the Class Vehicles were performed exclusively by Defendant.

72.     Upon information and belief, Defendant develops the owners' manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

73.     Defendant engages in continuous and substantial business in Minnesota.

## TOLLING OF STATUTES OF LIMITATION

---

[3] *Yamaha Motorsports Dealer Prospect Site*, YAMAHA, https://www.yamahamotorsports.com/dealerprospects (last visited Sept. 5, 2019).

[4] *Id.*

74.     Any applicable statute(s) of limitations have been tolled by Yamaha's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Radiator Defect until shortly before this class action litigation was commenced.

75.     Yamaha was and remains under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality and nature of the Class Vehicles and that it will require costly repairs and diminishes the resale value of the Class Vehicles. As a result of the active concealment by Yamaha, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.     The Radiator Defect within the Class Vehicles**

76.     Yamaha first introduced the YXZ 1000R Pure Sport Side-by-Side in the United States in 2016.

77.     The YXZ 1000R, YXZ1000SE, YXZ1000SS and YXZ1000 SS SE Pure Sport Side-by-Side for model years 2016-2018 years are all sold with the radiator located in the front of the vehicle.

78.     As background, a radiator is a type of heat exchanger. Generally, a cooling system works by sending a liquid coolant through passages in the engine.

As the coolant flows through these passages, it absorbs heat from the engine. The heated fluid then travels to the radiator.  As it flows through the tubes of the radiator, the hot liquid is cooled by the air traveling across the fins of the radiator. Once the fluid is cooled, it returns to the engine to absorb more heat. Adequate airflow across the radiator is a critical component in most cooling systems.

79.     The radiators in the Class Vehicles are intended to cool the Class Vehicles' engine and should ensure the engine does not overheat while the Class Vehicles are being operated. The below pictures illustrate the front mounted location of the radiators in the Class Vehicles:





80.     When the radiators on the Class Vehicles become clogged with mud, the radiators are unable to operate as intended, causing the Class Vehicles' engines to overheat. Once the engines overheat, the engines experience premature wear of the engines, engine bearings, and other internal engine components. Over time, premature wear will lead to catastrophic engine failure and even fire.

81.     Consumers have experienced frustration and financial impacts as a result of the Radiator Defect, when they have had to cut short their planned rides with Class Vehicles or surrender scheduled track time.

82.     Even when the Class Vehicles are used in areas without mud, the radiators are often unable to operate as intended, causing the Class Vehicles'

engines to overheat – sometimes destroying head gaskets or causing antifreeze to boil over, spraying drivers and passengers. As with the Class Vehicles that become clogged with mud, once the engines overheat, the engines experience premature wear of the engines, engine bearings, and other internal engine components. Over time, premature wear will lead to catastrophic engine failure and even fire.

**B.    Yamaha's Knowledge of the Radiator Defect**

83.    Yamaha publicly acknowledged the need to have the radiators relocated onto the rear of its Pure Sport Side-by-Side vehicles, thus demonstrating its knowledge of the Radiator Defect.

84.    Yamaha redesigned the YXZ 1000R Pure Sport Side-by-Side for the 2019 model year, stating: "[F]or 2019, the YXZ1000R SS uses an all-new cooling system that not only ensures proper cooling during the toughest conditions, but is designed to ensure the cabin remains comfortable and *the radiator stays clear of mud and debris.*"[5]

85.    Yamaha also touts its 2019 redesign as including a new cooling system that is "built to blow away the competition in every terrain, from desert dunes to muddy trails. To ensure peak performance every ride, *the 2019 YXZ1000R*

---

[5] *2019 YXZ1000R SS Specifications Sheet*, YAMAHA, https://www.yamahamotorsports.com/content/common/dpg/files/2019_yamaha_YXZ1000R_SS.pdf at p. 2 (last visited Sept. 5, 2019) (emphasis added).

*SS features a new rear-mounted radiator: this system not only reduces heat in the cabin, it remains clear of mud or debris build-up,* and is designed to funnel cool air through the radiator at low or high speeds equally well."[6]

86.     In fact, Yamaha has even issued a press release advertising the advantage of the relocation of the 2019 YXZ's radiator: "A new oversized radiator has been relocated behind the seats, eradicating excess cabin heat while simultaneously *eliminating the risk of clogging while driving through mud.*"[7] Below is a picture illustrating the location of the rear-mounted radiator in the 2019 YXZ:

---

[6] *Id.*

[7] *Yamaha 2019 YXZ1000R – Most Versatile Pure Sport Side-by-Side*, GLOBALNEWSWIRE (June 6, 2018), https://www.globenewswire.com/news-release/2018/06/06/1517774/0/en/Yamaha-2019-YXZ1000R-Most-Versatile-Pure-Sport-Side-by-Side.html (emphasis added).



87.    Yamaha Owners' Manuals explicitly warn owners of the Class Vehicles not to allow their radiators to become clogged with mud: "The engine will tend to overheat if the radiator is caked with mud. . . . "[8] However, this warning is meaningless as Yamaha designed and intended the Class Vehicles to be used for various activities such as mud bogging and for use on a wide variety of rough terrains, including muddy trails.

---

[8] *See Model Years 2016-18 YXZ 1000R Owner's Manuals*, Yamaha, available at https://dd5394a0b8ca8e97ba29-abf76f3d91a2125517d6c7c409f095c7.ssl.cf1.rackcdn.com/content/common/manuals/2018/2018_YXZ1000R_EPS_SE_LIT-11626-31-09_5ad6780e2a0ab744f8af1cee.pdf (April 2016) (last visited July 16, 2019), https://dd5394a0b8ca8e97ba29-abf76f3d91a2125517d6c7c409f095c7.ssl.cf1.rackcdn.com/content/common/manuals/2019/LIT-11626-32-32_5be3211c2a0ab6416052abdf.pdf (June 2018), at p. 8-70  (as to Model Year 2019) (last visited July 16, 2019).

88.     In many instances, consumers have incurred and will continue to incur expenses for repair of the radiators despite such Radiator Defect having been contained in the Class Vehicles when manufactured by Yamaha.

89.     Upon information and belief, Yamaha, through (1) its own records of customers' complaints, (2) dealership repair records, (3) warranty and post-warranty claims, (4) internal pre-sale durability testing, and (5) other various sources, was well aware of the Radiator Defect but failed to notify customers of the nature and extent of the problems with Class Vehicles or to provide any adequate remedy.

90.     Yamaha failed to adequately research, design, test and/or manufacture the Class Vehicles with the radiator in an appropriate location before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

91.     Yamaha is experienced in the design and manufacture of motorsports products. As an experienced designer and manufacturer, Yamaha conducts tests, including pre-sale durability testing, on all aspects of its products' designs, including radiator location, to verify that they are free from defect and align with Yamaha's specifications.

92.     Through its quality control initiatives, Yamaha knew or should have known that the engines in the Class Vehicles were defective.

93.     Yamaha has not contacted Class Members by direct mail, email, telephone or other means to inform them how they can receive free repairs related to the Radiator Defect within the United States. Additionally, upon information and belief, Yamaha has also not provided associated information regarding the Radiator Defect on its website or through the news media.

94.     Yamaha also expressly warranted the Class Vehicles to be "free from defects in material and workmanship" for a period of six (6) months from the date of purchase (except for the battery, which Yamaha warranted for a period of 30 days).[9] Upon information and belief, this warranty is applicable to the Radiator Defect; however, Yamaha has failed to correct the issue.

95.     Buyers and other owners of the Class Vehicles were without access to the information concealed by Yamaha as described herein, and therefore reasonably relied on Yamaha's representations and warranties regarding the quality, durability, and other material characteristics of the Class Vehicles. Had these buyers known of the Radiator Defect and the potential associated harm, they would have taken steps to avoid that harm and/or would have paid less for the

---

[9] *Owner's Manual – YXZ10YEXH, YXZ10YESH*, YAMAHA, available at https://dd5394a0b8ca8e97ba29-abf76f3d91a2125517d6c7c409f095c7.ssl.cf1.rackcdn.com/content/common/manuals/2017/LIT-11626-30-21%20REV%20-5-31-16_5951610c2a0ab7877c37bb12.pdf at p. 11-6 (last visited July 24, 2019).

Class Vehicles than the amounts they actually paid, or would not have purchased the Class Vehicles.

## C.   **Complaints by Other Class Members**

96.    Plaintiff's experience is by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of forums and other websites where consumers have complained of the exact same Radiator Defect within the Class Vehicles.

97.    The following is just a small sampling of the many complaints made by Class Vehicle owners. These publicly available complaints, posted as early as 2016, when the first Class Vehicles were placed into the market, evidence Yamaha's prior knowledge of the Radiator Defect, the negative experiences encountered by Class Members, and the financial burden this places on them:

Consumer No. 1:

Radiator Location Sucks for Mud!  I've taken all the radiator location comments with a grain of salt assuming it was guys trying to really mud it and I'm sure some that still pertains. Well I'm on the bandwagon of what a shitty design. I bought my YXZ to do sand so I'll likely never run into plugging the radiator but *I was astonished how little mud it takes to clog it up.* There was one YXZ in our group yesterday and there were a few mud holes we had to go through and they were not huge nor deep. But, they did have to be hit with some speed causing alot of splash. The YXZ went from no overheating problems at slow speeds to nearly instant high temps. Later we crossed a deep creek and he blew through it and was able to flush out the radiator and all the overhearing issues went away as fast as they started. I

realize this is not a mud machine but I was just really surprised and honestly disappointed how quickly a little mud on a mild trail ride caused problems.[10]

Consumer No. 2:

Searched for post about this so looking for your feed back. How is your yxz now since it's been overheated a few times? Asking because *mine clogged with mud and overheated twice this past weekend with red light coming on.* Just wondering if these engine are fragile or if they can take a little overheating and be fine. I of course did not run it hard after light came on but had drive easy and up hill for few min till could stop. Out in middle of no where trails will 80 other buggies. Coolant did bubble out but managed collect it and put back in along with fresh bottled water until next day. Have no reason to think any damage occurred and runs fine just peronoid [sic] bout this new machine.[11]

Consumer No. 3:
[H]as anybody had overheating issues with their yxz? *we rode on sunday in some pretty muddy conditions, and i ended up plugging up my radiator with mud and overheating it.* the temp light came on and i shut it down, but it popped the rad cap and spewed coolant everywhere.[12]

Consumer No. 4:

---

[10] Post by 6gearz, Administrator on Sept. 25, 2016, YXZTALK.COM, https://www.yxztalk.com/threads/radiator-location-sucks-for-mud.23265/ (last visited Sept. 5, 2019) (emphasis added).

[11] Post by WVgearReducYXZ on May 5, 2016, YXZTALK.COM, https://www.yxztalk.com/threads/overheating.4578/#post-180546 (last visited Sept. 5, 2019) (emphasis added).

[12] Post by arob on March 2, 2016, YXZTALK.COM, https://www.yxztalk.com/threads/overheat-and-radiator-hydrolock.8441/ (last visited July 16, 2019) (emphasis added).

Yep, I only had the clogged up challenge after running thru a 30' mud hole at speed each lap for around 5 laps... But my radiator was completely covered too. Just nothing down there to block the splash at all.[13]

Consumer No. 5:
Found out some interesting things. Apparently *after a day of ridding in very muddy conditions the radiator got plugged up.* Even after washing , which I cleaned out radiator , it was still packed with mud. Riding with the clogged radiator caused the coolant to heat up and drain out the overflow tube . The radiator has been thoroughly cleaned and coolant topped off and have had zero problems since.[14]

Consumer No. 6:
*Rode Brimstone this past weekend and had issues with overheating due to mud[ ] in radiator. Anyone else having this problem?*
Yup, mine overheated at royal blue last fall. . . check out my radiator relocate pics in the gallery. . . . [A] slightly more modified YXZ won the race, he also had radiator relocated.[15]

Consumer No. 7:
I'm kinda struggling with some of the standard over heating and excessive in cab heat issues and wanted to find a solution.

The only real answer for me was to relocate the radiator to the rear...addresses the mud-packing/over-heating issues and center tunnel, heat

[13] Post by True 520 on March 2, 2016, YXZTALK.COM, https://www.yxztalk.com/threads/overheat-and-radiator-hydrolock.8441/ (last visited July 16, 2019).

[14] Post by Jake on Jan. 25, 2016, YXZTALK.COM, https://www.yxztalk.com/threads/overheating.4578/ (last visited July 17, 2019) (emphasis added).

[15] Post by ShiftNitSE on March 2, 2016, YXZOWNERS.COM, https://www.yxzowners.com/forum/yamaha-yxz-1000r-general-discussion/3193-radiator-overheating-due-mudd.html (last visited Sept. 5, 2019).

funneling effect.[16]

98.     Further, at least one media source publicly discussed the Radiator Defect as early as 2016, placing Defendant on notice of its existence: "One of the biggest problems we found with the YXZ is the location of the stock radiator. It is not conducive to racing or riding in any type of mud. It will clog and cause the engine to overheat quickly. . . ."[17]

99.     Additionally, at least one company has successfully marketed a radiation relocation kit designed to address the Radiator Defect: "A very common problem for any UTV enthusiast is over heating due to the stock mounting location of the radiator. *The stock radiator is mounted up front which leaves it very vulnerable to damage and mud clogging. We have relocated the radiator to the rear,* increased coolant capacity, and incorporated dual fans! This is the ultimate setup for the driver that demands performance from their UTV!"[18]

---

[16] Post by Rocktonka on April 15, 2017, YXZTALK.COM, https://www.yxztalk.com/threads/custom-radiator-relocation.35786/ (last visited Sept. 5, 2019).

[17] *See* George White, *How to make your YXZ Race Ready*, UTVSCENE (updated July 16, 2016), https://utvscene.com/make-yamaha-yxz-race-ready/.

[18] *See Radiator Relocation Kit Yamaha YXZ1000R/SS*, HESS MOTORSPORTS, https://www.hess-motorsports.com/collections/yamaha-yxz/products/radiator-relocation-kit-yamaha-yxz1000r (last visited Sept. 5, 2019) (emphasis added); *see also Radiator Relocation Kit – Yamaha Grizzly*, HIGHLIFTER, https://www.highlifter.com/high-lifter-rad-kits-cooling/radiator-relocation-kit-yamaha-grizzly-rk-fr-y700.asp (Made for Yamaha Grizzly ATVs; "Nothing kills a ride worse than mud in the radiator. You're [sic] ATV is not quite broke, but it isn't running either. You and your buddies have to keep stopping

## CLASS ACTION ALLEGATIONS

100.   Plaintiffs bring this action on behalf of themselves, and on behalf of the following nationwide class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Nationwide Class consists of the following:

**Nationwide Class:**

All persons in the United States who are current or former owners of a Class Vehicle (the "Nationwide Class").

101.   In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs seek to represent the following state classes:

**Indiana Class:**

All persons in Indiana who are current or former owners of a Class Vehicle (the "Indiana Class").

**Minnesota Class:**

All persons in Minnesota who are current or former owners of a Class Vehicle (the "Minnesota Class").

**Ohio Class:**

All persons in Ohio who are current or former owners of a Class Vehicle (the "Ohio Class").

**California Class:**

---

over and over for you to cool off. Keep your radiator clean and your engine cool with High Lifter's Signature Radiator Relocation Kit designed especially for riders who love those deep mud holes.") (last visited Sept. 5, 2019).

All persons in California who are current or former owners of a Class Vehicle (the "California Class").

**Washington Class:**

All persons in <u>Washington</u> who are current or former owners of a Class Vehicle (the "<u>Washington</u> Class").

102.    Together, the Nationwide Class and the Indiana, Minnesota, Ohio, California and Washington Classes shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change or expand the Class definitions.

103.    <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Yamaha and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that thousands of Class Vehicles have been sold in each of the states that are the subject of the Class.

104.    <u>Predominance and Commonality</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.   whether the location of the radiators on the Class Vehicles makes them predisposed to becoming clogged with mud resulting in overheated engines;

b.   whether the location of the radiators on the Class Vehicles makes them predisposed to overheating whether or not they are ridden in the mud;

c.   whether the Class Vehicles contain a manufacturing or other defect as a result of the radiator placement;

d.   whether Yamaha's conduct constitute breaches of its express and implied warranties;

e.   whether, as a result of Defendant's breaches of express and implied warranties and/or misrepresentations of material facts related to the Radiator Defect, Plaintiffs and members of the Class have suffered ascertainable loss of monies and/or property and/or value;

f.   whether, as a result of Defendant's breaches of express and implied warranties and/or misrepresentations of material facts related to the Radiator Defect, Plaintiffs and members of the Class have suffered an increased cost of maintenance and/or repair related to the Class Vehicles; and

g.   whether Plaintiffs and Class members are entitled to monetary

damages and/or other remedies and, if so, the nature of any such relief.

105.   Typicality: All of the Plaintiffs' claims are typical of the claims of the Class since Plaintiffs purchased Class Vehicles with the Radiator Defect, as did each member of the Class. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Yamaha's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

106.   Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

107.   Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Yamaha's conduct. It would be virtually impossible for members of the Class to individually and effectively redress the

wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Yamaha's vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

108. <u>Injunctive Relief</u>: Pursuant to Fed. R. Civ. P. 23(b)(2), Yamaha has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

## **<u>VIOLATIONS ALLEGED</u>**

## **<u>COUNT I</u>**
## **VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT**
## **FOR BREACH OF EXPRESS WARRANTIES**
## **(CAL. CIV. CODE §§ 1791.2 & 1793.2(D))**
## **(On Behalf of the California Class)**

109. Plaintiffs incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

110.   Plaintiff Burling brings this claim on behalf of himself and on behalf of the members of the California Class against Defendant.

111.   Plaintiff Burling and the other California Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

112.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

113.   Yamaha is a "manufacturer" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

114.   Yamaha made express warranties to Plaintiff Burling and the other California Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

115.   Defendant breached these warranties by selling and leasing Class Vehicles with the defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

116.   Defendant did not promptly replace or buy back the vehicles of Plaintiff Burling and proposed California Class members.

117.   As a direct and proximate result of Yamaha's breach of its express warranties, Plaintiff Burling and the other California Class members received

goods whose condition substantially impairs their value to Plaintiff and the other

Class members. Plaintiff Burling and the other Class members have been damaged

as a result of, *inter alia,* the diminished value of Yamaha's products, the Class

Vehicles' malfunctioning, and actual and potential increased maintenance and

repair or replacement costs.

118.   Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff Burling and

the other Class members are entitled to damages and other legal and equitable

relief including, at their election, the purchase price of their Class Vehicles, or the

overpayment or diminution in value of their Class Vehicles.

119.   Pursuant to Cal. Civ. Code § 1794, Plaintiff Burling and the other

California Class members are entitled to costs and attorney fees.

**COUNT II**
**THE SONG-BEVERLY ACT – BREACH OF IMPLIED**
**WARRANTY VIOLATIONS OF CALIFORNIA CIVIL**
**CODE §§ 1792, 1791.1, *et seq.***
**(On Behalf of the California Class)**

120.   Plaintiffs incorporate by reference each preceding and succeeding

paragraph as though fully set forth at length herein.

121.   Plaintiff Burling brings this claim on behalf of himself and on behalf

of the members of the California Class against Defendant.

122.   Class Vehicles are "consumer goods" within the meaning of Cal. Civ.

Code § 1791(a).

123.   Yamaha is a "manufacturer" within the meaning of Cal. Civ. Code §
1791(j).

124.   Defendant impliedly warranted to Plaintiff and the California Class
that Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§
1791.1(a) & 1792.

125.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of
merchantability" or "implied warranty that goods are merchantable" means that the
consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or
label.

126.   Class Vehicles would not pass without objection in the automotive
trade because the Radiator Defect results in the Class Vehicles failing to operate as
intended and expected.

127.   Because the Radiator Defect poses an unreasonable risk to driver
safety and materially reduces the reliability and dependability of the vehicles, the
Class Vehicles are not fit for ordinary purposes for which such goods are used.

128.   Class Vehicles are not adequately labeled because the labeling fails to

disclose the Radiator Defect and does not advise proposed California Class members of the defect.

129.   The Radiator Defect deprived Plaintiff Burling and the proposed California Class of the benefit of their bargain and have caused Class Vehicles to be worth less than what Plaintiff and other proposed California Class members paid.

130.   As a direct and proximate result of Yamaha's breach of its duties, proposed California Class members received goods whose condition substantially impairs their value. Plaintiff Burling and the proposed California Class have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, and actual and potential increased maintenance and repair costs.

131.   Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff Burling and proposed California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles, and are also entitled to their attorney fees and costs.

<u>**COUNT III**</u>
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class and Indiana, Minnesota, Ohio and California Classes)**

132.   Plaintiffs and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

133.   Defendant expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Defendant also expressly warranted that its vehicles would be "free from defects in material and workmanship."[19]

134.   Defendant breached these warranties by selling to Plaintiffs and Class members the Class Vehicles with known radiator location problems, which are therefore not of high quality, and which fail prematurely and/or fail to function properly.

135.   As a result of the Defendant's actions, Plaintiffs and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

136.   Defendant's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendant's warranty limitations are unenforceable because it knowingly sold a defective product without informing consumers about the

---

[19] https://dd5394a0b8ca8e97ba29-abf76f3d91a2125517d6c7c409f095c7.ssl.cf1.rackcdn.com/content/common/manuals/2017/LIT-11626-30-21%20REV%20-5-31-16_5951610c2a0ab7877c37bb12.pdf at p. 11-6 (last visited July 24, 2019).

manufacturing and/or material defect.  Furthermore, Defendant continues to charge

Class members for relocating the radiators to the rear of the Class – if it addresses

the Radiator Defect at all -- when in fact such relocation is actually necessitated

because of Defendant's defective product.

137.   The time limits contained in Defendant's warranty periods were also

unconscionable and inadequate to protect Plaintiffs and members of the Class.

Among other things, Plaintiffs and Class members had no meaningful choice in

determining these time limitations, the terms of which unreasonably favored

Defendant. A gross disparity in bargaining power existed between Yamaha and

Class members, and Yamaha knew or should have known that the Class Vehicles

were defective at the time of sale and would fail well before their useful lives.

138.   Plaintiff and Class members have complied with all obligations under

the warranties, or otherwise have been excused from performance of said

obligations as a result of Defendant's conduct described herein.

## <u>COUNT IV</u>
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the Nationwide Class and Indiana, Minnesota, Ohio and California Classes)

139.   Plaintiffs and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

140.   A warranty that the Class Vehicles were in merchantable condition is

implied by law.

141.   These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which all-terrain side-by-side vehicles are used.  Specifically, the Class Vehicles are inherently defective in that their radiators are mounted on their front sides, making them prone to becoming clogged with mud.

142.   Defendant was provided notice of these issues by numerous informal and formal complaints filed against them, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

143.   As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

<u>**COUNT V**</u>
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class and Indiana, Minnesota, Ohio and California Classes)**

144.   Plaintiffs and the Class incorporate the foregoing allegations. This count is pled in the alternative to the contract-based claims.

145.   Plaintiffs and members of the Class conferred a benefit on Defendant.

146.   Defendant had knowledge that this benefit was conferred upon it.

147.   Defendant has been and continues to be unjustly enriched at the expense of Plaintiffs, and its retention of this benefit under the circumstances

would be inequitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    appoint Plaintiffs as the representative of the Class and their counsel as Class counsel;

C.    award any and all damages, as allowed by law, to which Plaintiffs and Class members are entitled;

D.    award pre-judgment and post-judgment interest on such monetary relief;

E.    grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to relocate radiators on the Class Vehicles to their rear sides, and/or to replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Radiator Defect;

F.      award reasonable attorney's fees and costs; and

G.      grant such further relief that this Court deems appropriate.

JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  January 27, 2021                    Respectfully submitted,

                                            **GUSTAFSON GLUEK PLLC**

                               By:    s/ *David A. Goodwin*
                                      David A. Goodwin (#386715)
                                      Daniel C. Hedlund (#258337)
                                      Ling S. Wang (#399447)
                                      Canadian Pacific Plaza
                                      120 South Sixth Street, Suite 2600
                                      Minneapolis, Minnesota 55402
                                      Tel: (612) 333-8844
                                      Fax: (612) 339-6622
                                      dgoodwin@gustafsongluek.com
                                      dhedlund@gustafsongluek.com
                                      lwang@gustafsongluek.com

                                      Matthew D. Schelkopf (admitted *pro hac vice*)
                                      Joseph B. Kenney (admitted *pro hac vice*)
                                      **SAUDER SCHELKOPF**
                                      1109 Lancaster Avenue
                                      Berwyn, PA 19312
                                      Tel: (610) 200-0581
                                      Fax: (610) 421-1326
                                      mds@sstriallawyers.com
                                      jbk@sstriallawyers.com

                                      *Attorneys for Plaintiffs*